# United States Court of Appeals

## For the First Circuit

No. 03-1075

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ REYES a/k/a JONATHAN CABALLERO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Oberdorfer,* Senior District Judge.

Norman S. Kominsky, for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

December 19, 2003

---

* Of the District of Columbia, sitting by designation.

**TORRUELLA, <u>Circuit Judge</u>.** A jury convicted defendant-appellant José Reyes ("Reyes") of possession of cocaine with intent to distribute and of conspiracy to commit the same offence. The district court sentenced him to concurrent sentences of 210 months in prison and six years of supervised release. Reyes appeals, claiming that the district court erred in denying his counsel's motion to withdraw and challenging the sufficiency of the evidence on the conspiracy charge. Reyes also claims he was ineffectively assisted by counsel.

After careful review, we dismiss Reyes's ineffective assistance of counsel claim as premature and affirm the district court's judgment regarding the other claims.

## I. Background

### A. Facts

On August 8, 2001, an agent of the Maine Drug Enforcement Agency ("MDEA") contacted Ron Idano ("Idano"), Reyes's co-defendant, seeking to purchase drugs. The MDEA agent arranged to meet Idano to purchase two "8-balls" (7 grams total) of cocaine for $500. Departing from the Howard Johnson's Hotel, Idano and Benjamín Cruz ("Cruz"), another co-defendant, set out to complete the sale. Idano and Cruz were arrested after the money and drugs were exchanged.

The MDEA learned that Cruz had gone to the Howard Johnson's Hotel before engaging in the drug sale. MDEA agents went

to the Howard Johnson's to find Cruz's room. They knocked on the door and Reyes opened it. The agents, disguised as hotel employees, inquired if it was Cruz's room. Reyes replied in the affirmative, but informed the disguised agents that Cruz was not in the room. An agent then identified himself as a police officer, causing Reyes to bolt away from the door, run into the bathroom, and close the door. The agents forced their way into the bathroom and retrieved a cocaine-filled plastic bag from Reyes's mouth. Reyes was arrested.

The room at the Howard Johnson's contained loose cocaine, a two-way radio, and receipts for a room at the Days Inn. Subsequently, the Days Inn room was searched. Cocaine, digital scales, a two-way radio, and marijuana were seized.

B. **The trial and preceding events**

On November 26, 2001, attorney Stephen Smith ("Smith") was appointed to represent Reyes pursuant to the Criminal Justice Act. One week before trial, Reyes filed a motion requesting that Smith withdraw as counsel. The district judge held a hearing and denied the motion. After denying the motion, Reyes informed Smith and the trial judge that he would not attend his own trial. The district judge urged Reyes to attend the trial, but he refused. On the day of trial, the district judge again urged Reyes to be present and informed him of his constitutional right to confront witnesses. After Reyes again refused to attend, the district judge

informed him he could change his mind at any time.  Reyes did not change his mind and was not present at the trial.

One hour before the trial began, Reyes's co-defendant, Cruz, decided to testify against Reyes.  Originally, Cruz had refused to testify against Reyes.  Cruz testified that he changed his mind because he could get an additional two to four years added to his own sentence if he refused to testify.

## II.  **Analysis**

### A.  **Counsel's motion to withdraw**

Smith submitted the motion to withdraw because Reyes wanted new counsel.  It has long been recognized that a criminal defendant "should be afforded a fair opportunity to secure counsel of his own choice."  Powell v. Alabama, 287 U.S. 45, 53 (1932).  This court has cautioned, however, that "although the right extends to indigent defendants, it does not afford them carte blanche in the selection of appointed counsel."  United States v. Myers, 294 F.3d 203, 206 (1st Cir. 2002) (citing United States v. Machor, 879 F.2d 945, 952 (1st Cir. 1989)).  After a court "appoints an attorney to represent an accused, a subsequent decision to replace that attorney is committed to the informed discretion of the appointing court."  Id.

We review the denial of a motion to withdraw for abuse of discretion.  United States v. Woodard, 291 F.3d 95, 106-07 (1st Cir. 2002); see also Myers, 294 F.3d at 207 (stating that the

-4-

deferential standard makes "perfect sense" because "the trial court is in the best position to assess the qualitative aspects of the complex relationship between a defendant and his appointed counsel"). In evaluating whether a district court abused its discretion in deciding a motion to withdraw, this court considers the following factors: "the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." Woodard, 291 F.3d at 107 (quoting United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986)).

### 1. The motion to withdraw was untimely

A defendant "has no right to representation by a particular attorney when such representation would require undue delay." United States v. Hallock, 941 F.2d 36, 44 (1st Cir. 1991) (internal citations omitted). In evaluating a motion to withdraw, a court must balance the "interest in retaining counsel of [the defendant's] choice against the public's interest in the prompt, fair and ethical administration of justice." United States v. Richardson, 894 F.2d 492, 496 (1st Cir. 1990) (internal citations and quotations omitted).

Smith was appointed as Reyes's counsel on November 26, 2001. Smith filed various suppression motions on Reyes's behalf. The motions were denied by a magistrate judge on March 6, 2002. On

April 1, 2002, Smith and Reyes learned that the case was set for trial on May 6, 2002. On April 11, 2002, the district judge adopted the magistrate judge's recommendation denying the suppression motions. Smith waited until April 29, 2002, one week before trial was to begin, to file the motion to withdraw.

Reyes claims that this motion was timely because it was filed within two weeks of the district court's confirming the magistrate judge's decision to deny Reyes's motions to suppress. Reyes, however, had known of the magistrate judge's decision for almost two months before the motion to withdraw was filed. The motion to withdraw was thus untimely. It was filed months after Reyes learned that the motion to suppress would probably be denied and a mere week before the scheduled trial. See, e.g., Myers, 294 F.3d at 207 (holding a withdrawal motion untimely that was submitted months after the conflict first developed and five days before trial); Woodard, 291 F.3d at 107 (holding that a motion for substitution of counsel thirteen days before trial was untimely); United States v. Mangual-Corchado, 139 F.3d 34, 42 n.18 (1st Cir. 1998) (commenting in dicta that a motion to withdraw filed three weeks before trial could be untimely).

## 2. The district court made an adequate inquiry

When a defendant "seeks the replacement of appointed counsel, we expect the trial court to conduct an appropriate inquiry into the source of the defendant's dissatisfaction."

Myers, 294 F.3d at 207 (internal citation omitted). The "extent and nature of the inquiry may vary in each case; it need not amount to a full formal hearing." Woodard, 291 F.3d at 108.

The district court made an adequate inquiry into the reasons Reyes sought new counsel. The district court scheduled a hearing the day after it received the motion. At the hearing, the district judge asked Smith if he was correct in concluding that the reason Reyes wanted new counsel was to get a more experienced lawyer. Smith informed the court that its conclusion was correct.

The district judge then asked Reyes why he wanted new counsel. Reyes responded that he wanted new counsel because he had recently learned he could be deemed a career criminal and wanted the best possible counsel available. Specifically, he wanted a lawyer with more trial experience than Smith.

Before making a final decision on the motion, the district judge asked Reyes a second time if there were any other reasons he needed a new lawyer. Reyes replied in the negative. The district judge indicated that he was very familiar with Reyes's case and that he thought Smith was a good attorney.

The district judge's inquiry was adequate. See, e.g., Myers, 294 F.3d at 205-07 (holding there was a sufficient inquiry when the judge engaged in a conversation with the defendant and with defendant's counsel regarding the reason for the motion to withdraw); Woodard, 291 F.3d at 108 (holding that there was an

-7-

adequate inquiry when the judge inquired of the defendant why there was a dispute with counsel); Richardson, 894 F.2d at 497 (holding there was an adequate inquiry when the judge questioned lawyers regarding nature of dispute); Allen, 789 F.2d at 93 (holding there was an adequate inquiry when the court "invited appellant to make a statement, listened to his reasons for being dissatisfied with his counsel, and found them to be without merit").

### 3. **There was not a total breakdown of communication**

A defendant who seeks to have appointed counsel withdraw must also show "more than the mere fact of a disagreement; he must show that the conflict between lawyer and client was so profound as to cause a total breakdown in communication," preventing an adequate defense. Myers, 294 F.3d at 208.

It appears that Reyes and Smith communicated well both before and after the motion to withdraw was filed. Smith had represented Reyes at his arraignment, filed suppression motions on Reyes's behalf, and attended the suppression hearings with Reyes. In addition, Reyes's communications with Smith were extensive enough for Reyes to learn that Smith did not have as much trial experience as another lawyer Reyes knew.

Reyes claims that he showed a total breakdown of communication by refusing to participate in his own trial. The record, however, does not reveal that such a breakdown occurred.

-8-

Smith and Reyes communicated during and after the motion to withdraw hearing, as well as during the trial.

Reyes was unable to show a total breakdown in communication, and the district court did not abuse its discretion by holding that there was no such breakdown. See, e.g., United States v. Pierce, 60 F.3d 886, 891 (1st Cir. 1995) (holding that there was no abuse of discretion when the record revealed the lawyer and defendant conversed and had some appreciation for each other's opinions). Furthermore, a defendant cannot compel a change to counsel by the device of refusing to talk with his lawyer.

The district court examined the timing of the motion to withdraw, questioned the lawyer and defendant on why the motion was filed, and concluded that there was no breakdown in communication precluding the presentation of an adequate defense. See Myers, 294 F.3d at 208. This decision falls squarely within the realm of the district court's discretion. See id.

### B. Ineffective assistance of counsel

Smith filed a motion for a psychological examination of Reyes after the trial but before sentencing. The motion was denied without prejudice. Reyes's new counsel later filed a new motion for psychological evaluation which was granted. Reyes argues for the first time on appeal that Smith's failure to request a psychological examination prior to trial amounted to ineffective assistance of counsel.

As this court has held, "with a regularity bordering on the monotonous[,] . . . claims of ineffective assistance cannot make their debut on direct review" but should be asserted to the district court under 28 U.S.C. § 2255. United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993). An exception to this rule exists where "the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim." United States v. Soldevila-López, 17 F.3d 480, 485 (1st Cir. 1994) (quoting United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991)). In such a case, "an appellate court may dispense with the usual praxis and determine the merits of such a contention on direct appeal." Id.

The present case does not fall within this exception because the district court did not make any findings of fact regarding what Smith "knew, or should have known, at the time his tactical choices were made and implemented." Id. (holding that an ineffective assistance of counsel claim is premature at the appellate level when the record did not show what counsel knew or should have known when counsel did not request a psychological exam until after trial, but before sentencing). The record shows that Reyes wanted new counsel, but it does not show that Reyes was incompetent to stand trial. More information regarding what Smith knew or should have known is needed before a court can determine if failing to request a psychological exam amounted to ineffective

-10-

assistance of counsel.  An ineffective assistance of counsel claim that requires further factual determinations should be brought through a collateral proceeding in district court under 28 U.S.C. § 2255.  Id. (citing United States v. Sutherland, 929 F.2d 765, 774 (1st Cir. 1991)).

## C.  **Conspiracy**

Reyes argues that there was insufficient evidence introduced at trial to support the jury's verdict convicting him of conspiracy to possess cocaine with intent to distribute.[1]  The guilty verdict will "stand unless, viewing the evidence in the light most favorable to the prosecution, no reasonable jury could have rendered" it.  United States v. Nelson-Rodríguez, 319 F.3d 12, 27 (1st Cir. 2003) (citing United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995)).  "In applying this standard, no premium is placed upon direct as opposed to circumstantial evidence  . . . . [a]nd in conducting its review, this court cannot . . . make credibility judgements; [a] task . . . solely within the jury's province."  United States v. Hernández, 218 F.3d 58, 64 (1st Cir. 2000) (quoting United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)) (internal quotations omitted).  If the evidence, "viewed in the light most favorable to the verdict gives equal or nearly equal

---

[1]  Reyes also argues that there would be insufficient evidence to convict him of possession with intent to distribute if there is insufficient evidence of a conspiracy.  We need not address this argument because we find there was sufficient evidence to support the conspiracy charge.

circumstantial support to a theory of guilt and a theory of innocence of the crime charged," then this court will reverse the conviction.  United States v. Morillo, 158 F.3d 18, 22 (1st Cir. 1998) (quoting United States v. Flores-Rivera, 56 F.3d 319, 323 (1st Cir. 1995)) (internal quotations omitted) (further citation omitted).

There are three basic components to a drug conspiracy: "[t]he existence of a conspiracy, the defendant's knowledge of the conspiracy, and the defendant's voluntary participation in the conspiracy."  Nelson-Rodríguez, 319 F.3d at 27-28 (quoting United States v. Gómez-Pabón, 911 F.2d 847, 852 (1st Cir. 1990)) (internal quotations omitted).  "Mere association" with conspirators or "mere presence" during conspiracy activities "will not, standing alone, be sufficient for conviction."  Id. at 28.

A reasonable jury could have found Reyes guilty of a conspiracy to distribute cocaine beyond a reasonable doubt.  There was both direct and circumstantial evidence supporting such a verdict.  See Nelson-Rodríguez, 319 F.3d at 28 (citing United States v. Aponte-Suárez, 905 F.2d 483, 490 (1st Cir. 1990) (stating that conspiratorial agreement may be inferred from circumstantial evidence)).

First, Cruz testified that Reyes had been selling him twenty grams of cocaine per day for a two month period.  A single isolated purchase of an illegal drug is not enough to establish a

-12-

conspiracy. See United States v. Izzi, 613 F.2d 1205, 1210 (1st Cir. 1980). Multiple sales over a span of time, however, can constitute sufficient evidence to establish a conspiracy. See United States v. Soler, 275 F.3d 146, 151 (1st Cir. 2002) (finding three sales over a two-day period, with an inventory of heroin suggesting a readiness to engage in future transactions, amounts to evidence of a conspiracy).

Reyes challenges the sufficiency of the evidence on this point because Cruz testified to avoid a harsher sentence. Indeed, the jury was aware that Cruz might have gotten an additional two to four years added to his sentence had he refused to testify. Credibility judgments, however, are solely within the jury's province and will not be disturbed by this court. See United States v. Hernández, 218 F.3d 58, 64 (1st Cir. 2000); see also Gómez-Pabón, 911 F.2d at 853 (holding that a jury's determination of a witness's credibility will not be disturbed unless the testimony is "incredible or insubstantial on its face"). The jury could have discounted Cruz's testimony, but it did not. See, e.g., Gómez-Pabón, 911 F.2d at 853 (holding that evidence was not rendered insufficient because it consisted largely of uncorroborated testimony of a paid informer).

Second, Cruz identified the Howard Johnson's as the place where he picked up the cocaine. Idano confirmed that he dropped Cruz off at the Howard Johnson's to set up the drug transaction.

-13-

When the agents knocked on the door to the Howard Johnson's room, Reyes answered.

Reyes contends that his presence in the room is insufficient to prove a conspiracy. Reyes is correct that mere presence in a room where drugs are stored or drug transactions occur is insufficient to prove membership in a conspiracy. See United States v. Ocampo, 964 F.2d 80, 82 (1st Cir. 1992) (holding that mere presence at the scene of a crime is insufficient to prove membership in a conspiracy). Reyes's argument fails, however, when viewing the evidence in the light most favorable to the verdict. See Nelson-Rodríguez, 319 F.3d at 28.

The evidence suggests that Reyes was more than merely present in the hotel room. For instance, upon learning that the agents were police officers, Reyes ran to the bathroom and attempted to swallow 3.1 grams of cocaine packaged in a plastic bag containing nine small "bag corners." A mere visitor would not attempt to ingest over 3 grams of cocaine to avoid its discovery by police.

Furthermore, a subsequent raid of the Days Inn room led agents to discover over eighty grams of cocaine, some of which was wrapped in a plastic bag containing nine small "bag corners" -- the same type of packaging as the cocaine Reyes tried to ingest. See Soler, 275 F.3d at 151 (finding similarly marked bags of heroin to be evidence of a conspiracy).

-14-

Last, the Howard Johnson's contained a two-way radio set to the same channel as the two-way radio found at the Days Inn -- the hotel room where the bulk of the cocaine was stored. It would not be unreasonable for the jury to conclude that the occupant of the Howard Johnson's room, Reyes, worked together with the occupant of the Days Inn room to distribute the cocaine. By having two rooms, the conspirators might have hoped that if the drugs were traced to the point of distribution, the Howard Johnson's room, the bulk of the cocaine would never be discovered since it was stored in the Days Inn room. The testimony of Cruz and the actions of Reyes support such a finding by the jury.

Defendants "challenging convictions for insufficiency of evidence face an uphill battle on appeal" and, like Sisyphus, Reyes does not reach the top. See Hernández, 218 F.3d at 64.

### III. Conclusion

We therefore affirm the district court's judgment without prejudice to Reyes's right to raise his ineffective assistance of counsel claim by filing a timely petition for post-conviction relief. See 28 U.S.C. § 2255.

**Affirmed**.