# United States Court of Appeals
## For the First Circuit

No. 02-2505
    02-2506

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE R. VÁZQUEZ GUADALUPE;
VICTOR J. PACHECO-DIAZ,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Selya, Lynch, and Lipez,
Circuit Judges.

J. Michael McGuinness, with whom The McGuiness Law Firm was on brief, for appellant Pacheco-Diaz.
    Ignacio Fernández de Lahongrais on brief for appellant Vázquez Guadalupe.
    German A. Rieckehoff, Assistant United States Attorney, with whom Nelson Pérez-Sosa, Assistant United States Attorney, Senior Appellate Attorney, and H.S. Garcia, United States Attorney, were on brief, for appellee.

May 18, 2005

**LYNCH**, **Circuit Judge**.  Defendants present arguments to vacate criminal convictions where the prosecution introduced Spanish language audio tapes containing evidence of the defendants' criminal activity.  The issues raised here concerning compliance with the Court Reporter Act, 28 U.S.C. § 753(b), and the Jones Act, 48 U.S.C. § 864, have been resolved by our decision in United States v. Morales-Madera, 352 F.3d 1 (1st Cir. 2003).  We reaffirm the principle of Morales-Madera that where English transcripts of foreign language conversations were presented to the jury, and no objection was raised as to the accuracy of transcription or translation, the failure to put the transcripts into evidence may be cured under Fed. R. App. P. 10(e).  We add today the requirement that the government must in these circumstances supplement the record promptly upon the filing of any notice of appeal, so that appellate counsel for the defendant has adequate opportunity to review the supplemented record before defendant's brief is due.

Concluding that the challenges going both to the verdicts and to the sentences are without merit, we affirm the convictions and sentences.

**I.**

The prosecutions of these two defendant police officers are part of a series of cases resulting from an undercover investigation known as "Honor Perdido" into corruption among officers of the Police of Puerto Rico.  For a fuller description of

-2-

the Honor Perdido investigation, see <u>United States</u> v. <u>Flecha-Maldonado</u>, 373 F.3d 170, 172 (1st Cir. 2004). Defendant José Vázquez Guadalupe was a police officer assigned to the Criminal Investigative Center of the Police of Puerto Rico ("PPR", a single unified police department). Defendant Victor Pacheco-Diaz was a PPR officer assigned as a task force agent to work with the Federal Bureau of Investigation ("FBI") on a federal anti-drug task force in Fajardo, Puerto Rico. Both officers were ensnared in an FBI sting operation: they agreed to and did participate in what they understood to be the transport of cocaine in Puerto Rico. The two defendant officers met with an undercover agent/"dealer" named Arturo Ortiz Colón and agreed to protect and transport five kilograms of cocaine in return for payments of money.[1]

On June 15, 2000, the defendants provided protection for the transport of the cocaine. The defendants took advantage of their positions as officers. They used a car assigned to the federal anti-drug task force. Both defendants were armed with weapons, their police weapons, so that they could protect the drugs. They talked about what would happen if they were stopped and agreed that they would identify themselves as police officers and so be able to avoid any problems. Indeed, Pacheco-Diaz offered

_____

[1]Ortiz was a police officer who had previously been caught committing a drug crime. He then agreed to work with the FBI and thus acted both as an undercover agent and as a cooperating witness.

-3-

not only to provide protection for the transport of drugs but to deliver the cocaine himself. At the delivery point they used police counter-surveillance techniques to check for law enforcement vehicles. They successfully accomplished the delivery of the drugs. On June 20 Ortiz, the undercover agent, met with Vázquez and paid him $3,000 for the transport of the drugs. That same day Ortiz met with Pacheco-Diaz and paid him $3,000. Pacheco-Diaz indicated he was available for future escorts.

Pacheco-Diaz became suspicious and himself investigated the purported dealer Ortiz, found some information suggesting that Ortiz was an undercover agent, and asked to meet with him. Pacheco-Diaz then met agent Ortiz, asked why the officer "want[ed] to screw [him]," and then threatened to kill him. Shortly thereafter, both defendants were arrested.

After a jury trial from April 11 through April 19, 2002, the two defendant officers were convicted on all three counts: one count of conspiracy to distribute narcotics (Count I) and one count of attempt to distribute narcotics (Count II), in violation of 21 U.S.C. § 846, and a third count of use of a firearm during the commission of a drug trafficking crime (Count III), in violation of 18 U.S.C. § 924.

Defendant Vázquez was sentenced to 248 months of imprisonment, consisting of 188 months for each of the drug trafficking counts to be served concurrently, and 60 months for the

-4-

third count of use of a firearm during commission of a drug trafficking crime, to be served consecutively to the time for Counts I and II. He was also sentenced to a supervised release term of eight years for Counts I and II and three years for Count III, to be served concurrently. Defendant Pacheco-Diaz received the same prison sentence as Vázquez: 188 months concurrent for Counts I and II, and 60 months consecutive for Count III. He also received eight years of supervised release for Counts I and II and three years for Court III, to be served concurrently.

Both appealed, raising attacks on their convictions and their sentences.

**II.**

A.  Arguments of Defendants

1.  Pacheco-Diaz

Pacheco-Diaz argues that there were numerous trial errors which should result in his conviction being vacated. His primary argument is that the trial was flawed because the court did not instruct the translator to translate Spanish language conversations on audio tapes introduced into evidence, and the court reporter to transcribe them simultaneously with the playing of the tapes. He describes this as a violation of the Court Reporter Act and a violation of the rule the Supreme Court set down in Hardy v. United States, 375 U.S. 277 (1964). Pacheco-Diaz also alleges a series of evidentiary errors: in permitting a testifying agent to present an

-5-

overview of the case, in admitting bad act evidence and hearsay, in denying his request to present a video tape, and in denying a motion seeking production of files. He argues that the overall effect of the errors constitutes prejudicial error.

Pacheco-Diaz further argues that the trial court erred in failing to grant his Rule 29 motion for judgment of acquittal. He argues that the verdict could not be based on the testimony of an admittedly corrupt cooperating witness who was paid financial compensation, and that the evidence was insufficient to support a conviction, particularly on Count III, the charge that he used a firearm in the commission of a drug trafficking crime.

As to sentencing, he argues that the sentence should be vacated because appellant was subject to sentencing entrapment and manipulation.[2]

2. Vázquez

Defendant Vázquez makes two arguments. He objects to presenting the audio tapes, which were solely in Spanish, without ascertaining if the jurors were fluent enough in Spanish to understand the tapes. He secondly argues that the Guidelines

---

[2]He also appears to argue that it is the obligation of the court to review the record for further error not articulated by the defendant. This is a misunderstanding of Anders v. California, 386 U.S. 738 (1967). Anders holds that the court must examine all the proceedings to decide whether an appeal is wholly frivolous, after appointed defense counsel has so advised the court and requested to withdraw. Id. at 744. It says nothing about an obligation of the court independently to review the record for errors not raised by the defendant.

maximum supervised release term for his offense was five years, and therefore the court erred in sentencing the defendant to eight years of supervised release because defendant did not receive prior notice before receiving a sentencing enhancement. See United States v. Cortes-Claudio, 312 F.3d 17, 23 (1st Cir. 2002). The government agrees with the second contention and so without further discussion we will remand that portion of Vázquez's sentence pertaining solely to the eight years of supervised release for correction of that error. We note that Pacheco-Diaz similarly received eight years of supervised release term, although it is not apparent from the briefing or record whether he received adequate notice. In light of the government's concession in the companion case, we will also remand the supervised release portion of Pacheco-Diaz's sentence for the limited purpose of determining whether he was similarly sentenced in error and, if so, for correction of that error.

B. Merits of Defendants' Arguments

To set the context, we describe the use of audio and video tape evidence in this case. Much of the government's case was proven through audio and video tapes of the defendants' activities. Accordingly, before trial, the government prepared Spanish transcripts of what was said in those tapes. These Spanish transcripts were also translated into English. Before trial, counsel for the defendants were given copies of both the Spanish

version and the English translations of what was said in the tapes. The defense counsel also had access to the tapes themselves, enabling them to check for both types of accuracy. At trial, Pacheco-Diaz's counsel objected to the reliability of one tape and its transcription, and the district judge excluded that tape from evidence. Defense counsel raised no objection at any time to the accuracy of the Spanish transcription of the conversations nor to the accuracy of the English translations as to any other tapes.

The facts distinguish our decision in United States v. Rivera-Rosario, 300 F.3d 1 (1st Cir. 2002). There, the government failed to follow these procedures; more than 180 tapes were played for which there was never any English translation in the district court proceedings; the government failed to comply with Fed. R. App. P. 10(e) and then attempted, for the first time on appeal before this court, to provide English translation never available at the district court; furthermore, there were serious factual disputes as to the translation's accuracy. Id. at 5-9.

At trial in this case, the audio and video tapes were played for the jury. The jury also was given copies of the Spanish and English language transcripts without objection from defense counsel. As was the custom at the time, and before our decision in Morales-Madera, the trial court did not enter the transcripts into evidence; however, the government requested that the court mark the exhibits and offered them as evidence. The defense made no

objection to this procedure at trial and no question was raised as to the accuracy of the transcription or of the translation.

Because the transcripts had not been entered into evidence, the government, on appeal, and in accordance with <u>Morales-Madera</u>, under Fed. R. App. P. 10(e) filed the transcripts as exhibits with this court on February 22, 2005 to complete the record.

1. <u>Jones Act and Court Reporter Act</u>

    a. <u>Pacheco-Diaz</u>

Pacheco-Diaz's appellate counsel, who was not trial counsel, bases his appeal primarily on the argument that this procedure was in violation of the Court Reporter Act, 28 U.S.C. § 753(b). This contention is entirely foreclosed by this court's decision in <u>Morales-Madera</u>, 352 F.3d at 6. There we explicitly held that the Court Reporter Act does not require a court reporter to transcribe (nor a translator to translate) conversations on wiretap tapes which are played to the jury. <u>Id.</u> This same reasoning applies to audio tapes played to the jury. Such transcription is not required because "[t]he conversations on the . . . tapes are not testimony from witnesses before the court that must be recorded in a verbatim transcript." <u>Id.</u> The Jones Act, 48 U.S.C. § 864, is satisfied where accurate transcripts of the taped Spanish conversations were provided to counsel and to the jury. <u>Id.</u> at 7. We instructed that the government had an

obligation to provide copies of English translations of the transcripts of Spanish recordings to defense counsel adequately in advance of trial so that any disputes concerning the reliability of the transcription in the original language and/or of the English translation might be brought to the attention of the district court or resolved by agreement. Id. at 8. There is no question here that the government met those obligations.

Morales-Madera also held that the English language transcripts of the Spanish language wiretaps used by the jury as aids during the playing of the recordings should have been submitted into evidence, in order to comply with the Jones Act. Id. at 9.

Morales-Madera reasoned that even if, hypothetically, not transcribing the recordings amounted to a Court Reporter Act violation, any error was harmless when the recording itself was entered into evidence. Id. at 7. We held that the best evidence rule requires that the recordings played in open court be entered into evidence. Id. at 9. However, this did not mean that reliable English translations of the tapes must be excluded from evidence; they should be introduced. Id.

Morales-Madera also held that where counsel did not object at trial to the failure to introduce into evidence the English translations of Spanish audio tapes, only plain error review was available. Id. at 10. We also held that any error

could be cured by the government using the procedure of supplementing the record with English translations under Fed. R. App. P. 10(e), so long as there are no issues regarding the accuracy of the translation and the English transcripts were actually available during the proceedings below. Id. at 11.

On appeal, Pacheco-Diaz argues that this court's decision in Morales-Madera was wrongly decided in light of the Supreme Court's decision in Hardy, 375 U.S. 277. Nothing in Hardy is inconsistent with Morales-Madera; to the contrary Morales-Madera is in complete compliance with Hardy. Hardy held that new court-appointed counsel who represents an indigent defendant on appeal (but not at trial) may obtain at public expense the entire transcript in order to determine which issues should be raised on appeal. Id. at 279-80. Hardy does not involve the Court Reporter Act at all and involves no issue of whether the recordings played at trial were indeed transcribed.

Indeed, the underlying theme of Hardy is the necessity to make available to new appellate counsel the transcript needed so that counsel could review the record to faithfully discharge the obligation of representing his or her client. Consistent with Hardy, Morales-Madera requires that the written transcription of a tape played to the jury be submitted into evidence to provide sufficient basis for appellate review. Morales-Madera, 352 F.3d at 9-10. In those instances where that was not done, then the

government must supplement the record on appeal with the undisputed transcript of any tapes that were played for the jury. Id. at 11. Morales-Madera fulfills, not defeats, the reasoning of Hardy.

Pacheco-Diaz makes a separate argument, based on a misreading of our holding in Rivera-Rosario, 300 F.3d 1. In arguing for an automatic-reversal rule, he reads Rivera-Rosario's language suggesting that the court has an obligation to secure compliance with the Court Reporter Act to mean that the court itself must order transcription by a court reporter of what is said in a video or audio tape. Rivera-Rosario, as noted earlier, is not applicable. As we have said, here there was no violation of the Court Reporter Act.

And even if there had been error, violation of the Court Reporter Act does not require automatic reversal. United States v. Mescual-Cruz, 387 F.3d 1, 12 (1st Cir. 2004) ("Nothing prescribes automatic reversal of a defendant's conviction for non-compliance with the Court Reporter Act." (quotation and alteration omitted)). Rather, to obtain reversal and a new trial, the defendant must demonstrate specific prejudice to his ability to perfect an appeal. United States v. Smith, 292 F.3d 90, 97 (1st Cir. 2002). The same is true for the Jones Act. See Mescual-Cruz 387 F.3d at 11; Morales-Madera, 352 F.3d at 10.

Finally, at oral argument the court raised its own concern about new appellate defense counsel's access to the

supplemental record materials under Rule 10(e) before preparing his brief on appeal.  It may be this was what was meant by counsel's reference to Hardy.[3]  The government was at fault for not supplementing the record on appeal with the transcripts well before the appellant's brief was due.  The transcript was added to the record on appeal after appellant's brief was filed.  The office of the United States Attorney in Puerto Rico has assured us that it will see that this problem does not recur and that in cases in which Spanish and English language transcripts given to counsel and the jury were not put into evidence at trial, the government will supplement the appellate record under Rule 10(e) as soon as practicable after the notice of appeal is filed.

As a result of our concerns, this court granted an extension of time to appellate defense counsel to review those transcripts and file supplemental briefing.  He has now done so. In his supplemental brief, appellant renews the arguments above, and in addition argues that the transcripts were provided to the jury erroneously because they had not been properly authenticated and the trial court failed to take proper steps to address the reliability of the Spanish language transcripts and their translation.  Bu these claims were not raised at trial and even now

---

[3]It is true counsel could have gotten the transcripts from trial counsel or obtained copies from the government.

appellate counsel offers no reason to believe the transcripts, certified by the district court, are inadequate or inaccurate.

Further, he argues that at oral argument, the government admitted that no transcripts were made of the video tapes played, and thus the Pacheco-Diaz's complaint as to the deficiency of the appellate record has not been fully cured by the government providing transcripts of the audio tapes played at trial. He does not make any argument that the evidence in the Rule 10(e) supplement undermines his client's conviction.

As to the contention that no transcripts were made of the video tapes, Pacheco-Diaz misunderstands the government's explanation as to how the tapes were played at trial. The government explained that the video recordings did not themselves record sound; separate audio recordings occurred and were played along with the corresponding video. The government made transcripts of all audio tapes played at trial.

b. Vázquez

Vázquez makes a related argument that there was error in playing the Spanish language audio tapes without first ascertaining that the jurors were fluent in Spanish. He argues this is a violation of the Jones Act and the Court Reporter Act. To the contrary, there is no violation of the Court Reporter Act. The argument made is itself contrary to the Jones Act, which establishes English as the language of the federal courts in Puerto

-14-

Rico. 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); Morales-Madera, 352 F.3d at 7.

The Jones Act thus requires that jurors be competent in English, not Spanish. Evidence in another language which is presented must be translated into English. The English language translations of the transcripts of the audio tapes were provided to the jury, so Vázquez's claim fails.

## 2. Evidentiary Errors

We start with Pacheco-Diaz's argument, long since rejected by this court, that the Due Process Clause and Sixth Amendment are violated when the government "turns" a criminal defendant into a cooperating witness, pays the witness to engage in a sting operation and then uses the testimony of the witness. United States v. Innamorati, 996 F.2d 456, 481-82 (1st Cir. 1993). Ortiz's testimony was admissible; it is left for the jury to evaluate his credibility. United States v. Reyes, 352 F.3d 511, 518 (1st Cir. 2003). In the end, the argument boils down to an assertion that the government cannot conduct sting operations using individuals who expect to receive leniency or financial compensation in exchange for their cooperation. We reject that argument. We note, moreover, that this case did not turn on Ortiz's testimony. At the heart of the government's case were the

audio and video tapes, in which the defendants incriminated themselves.

Pacheco-Diaz makes miscellaneous other arguments in shorthand fashion: the court erred in denying his motion to produce files and to introduce a video tape, as well as in introducing prior bad act evidence and hearsay. These arguments are desultory and are waived. United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997) ("We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation."). Moreover, given the overwhelming nature of the evidence against the defendant, even if any of the claimed errors had occurred, they were clearly harmless. Tse v. United States, 290 F.3d 462, 465 (1st Cir. 2002). The argument that the government improperly used agent Pelaez as an overview witness, United States v. Casas, 356 F.3d 104, 118-20 (1st Cir. 2004), was not made at trial, and is subject to plain error review. The argument is not supported by adequate record citation, and given the overwhelming evidence against the defendant, there is no plain error. Further, the denial of the defendant's Rule 29 motion was entirely correct: the evidence of guilt as to all three charges was overwhelming.[4]

---

[4]The defendant attempts to claim that the 18 U.S.C. § 924(c) charge is unsupported by the evidence because the gun he possessed was an inherent part of his employment as a police officer. This argument is plainly wrong; defendant used his status as a police officer, which includes the fact that he carries a gun, in order to

### 3. Attack on Sentence

Finally, Pacheco-Diaz attacks his sentence, arguing he was subjected to sentencing entrapment and manipulation, because the five kilograms of cocaine he purportedly transported was a fictional amount of cocaine designated by the government. He cites United States v. Connell, 960 F.2d 191 (1st Cir. 1992), which provides him no support. In dicta in Connell, we stated that there is a potential for sentencing entrapment or manipulation where "exploitative manipulation of sentencing factors by government agents might overbear the will of a person predisposed only to commit a lesser crime." Id. at 196. However, we further stated that "sting operations are designed to tempt the criminally inclined, and a well-constructed sting is often sculpted to test the limit of the target's criminal inclinations." Id. There is simply no evidence that Pacheco-Diaz was inclined to commit a crime of trafficking less than five kilograms, but some misconduct by the government overbore his will and forced him to transport more than five kilograms. On the contrary, the evidence was overwhelming, in the form of uncontested testimony by the government's witness and

protect the drug transaction in which he engaged. This clearly provides an adequate nexus between his possession of the gun and the drug trafficking crime sufficient to support the charge. See United States v, Castro-Lara, 970 F.2d 976, 983 (1st Cir. 1992) ("If a gun is possessed for some other, perhaps legitimate, purpose, an intent to have it available for possible use in connection with, say, a drug deal, or as a device to lend courage during such a transaction, will suffice to invoke the statute.").

-17-

audio and video tape evidence, that Pacheco-Diaz voluntarily agreed to protect the transport of five kilograms of cocaine.

We **affirm** the convictions and sentences of both Pacheco-Diaz and Vázquez, except for that portion of the sentences pertaining to supervised release, and on remand direct the district court to correct the terms of supervised release as to Vázquez, and as to Pacheco-Diaz only if he did not receive adequate notice, in a manner consistent with this opinion.

**So ordered**.