# United States Court of Appeals
## For the First Circuit

No. 06-1620

UNITED STATES OF AMERICA,

Appellee,

v.

EDGAR POMALES-LEBRÓN,
a/k/a Edgardo Oscar Pomales-Lebrón,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before
Torruella, Circuit Judge,
Baldock[*], Senior Circuit Judge,
and Smith[**], District Judge.

Arturo Luciano Delgado for appellant.
Andrew Massucco-LaTaif, Assistant United States
Attorney, with whom Rosa Emilia Rodríguez-Vélez, United
States Attorney, Nelson J. Pérez-Sosa, Assistant United
States Attorney, and Germán A. Rieckehoff, Assistant United
States Attorney, were on brief for appellee.

January 17, 2008

---

[*] Of the Tenth Circuit Court of Appeals, sitting by
designation.

[**] Of the District of Rhode Island, sitting by
designation.

**BALDOCK**, **Senior Circuit Judge**. A grand jury indicted defendant Edgar Pomales-Lebrón and five co-defendants for drug-trafficking offenses. Defendant was charged with: (1) conspiracy to possess with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841, 846 (Count 1); and (2) possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (Count 2).[1] A petit jury convicted defendant on both counts. On appeal, defendant challenges his convictions, arguing that the district court erred in denying his: (1) Motion for Acquittal; and (2) Motion for New Trial. See Fed. R. Crim. P. 29, 33. As to defendant's Rule 29 Motion for Acquittal, we have jurisdiction, pursuant to 28 U.S.C. § 1291, and affirm. As to defendant's arguments pertaining to Rule 33, we lack jurisdiction and dismiss.

I.

Viewed in the light most favorable to the government, the trial evidence demonstrated that: in late 2003, Drug Enforcement Administration (DEA) Special Agent

---

[1] In addition, the First Superceding Indictment included a Count 3, which stated that any property derived from the offenses stated in Counts 1 and 2 would be subject to forfeiture. The district court dismissed Count 3 for lack of evidence after defendant rested his case. (12/2 Tr. 75.)

Todd Yant (SA Yant) began investigating the Joel Rivera-Delgado drug-trafficking organization (the Rivera organization) based in Guayama, Puerto Rico. (Tr. 68:10-11.) To further the investigation, DEA used a paid confidential source (CS) to infiltrate the Rivera organization. (Id.; see also 12/2 Tr. 30.) At trial, the CS testified in person and admitted he used marijuana in December 2003 and January 2004. (See 12/2 Tr. 29, 32.)

On December 19, 2003, the CS was introduced to Harry Arizmendi-Serrano, a Rivera organization affiliate. (11/30 Tr. 78; 12/1 Tr. 100.) The CS purchased 100 vials of cocaine base (crack), weighing 7.4 grams (12/1 Tr. 16), from Arizmendi. (11/30 Tr. 78; 12/1 Tr. 100.) According to the CS, although he did not know defendant Edgar Pomales-Lebrón's name at the time (12/1 Tr. 131), defendant was present when he purchased crack from Arizmendi on December 19.[2] (12/1 Tr. 101, 104, 109-10.) The CS recorded this

---

[2] The CS did not inform the government that defendant was present at the December 19, 2003 transaction until November 30, 2005, after the conclusion of the first day of defendant's trial. (12/1 Tr. 2.) Before the trial resumed on December 1, 2005, the government apprised the district court and defendant of this development. (12/1 Tr. 2.) Defendant objected to the CS's proposed testimony regarding defendant's presence at the December 19, 2003 deal. (12/1 Tr. 103.) Specifically, defendant argued that he would be prejudiced by such testimony due to, inter alia, his having inadequate time to prepare. (12/1 Tr. 103.) The district court, however, allowed the testimony finding: (1) no bad
(continued...)

transaction; DEA conducted partial video surveillance.[3] (12/1 Tr. 75-76, 105.)

On December 31, 2003, the CS arranged for a larger controlled buy from Arizmendi. (11/30 Tr. 79-80.) SA Yant testified that the 600 crack vials the CS purchased on that date weighed 49 grams. (11/30 Tr. 81.) DEA conducted video surveillance of the deal. (12/1 Tr. 83.) Defendant was not present during the December 31 transaction. (12/1 Tr. 16, 23.)

On January 12, 2004, the CS met with Arizmendi and defendant to arrange a 1000-vial crack buy. (11/30 Tr. 84-85; 12/1 Tr. 117.) The CS learned defendant's name for the first time at this meeting. (11/30 Tr. 84; 12/1 Tr. 130-31.) When asked by the CS, defendant and Arizmendi identified their supplier as "Joel."[4] (12/1 Tr. 132-33.)

---

(...continued)
faith on the government's part; (2) the December 19, 2003 buy was, in any event, carried out during, and in furtherance of, the charged conspiracy; (3) the government promptly disclosed this development to the court and opposing counsel; and (4) defendant had sufficient time to prepare (i.e., primarily during the one and one-half hour lunch break). (See 12/1 Tr. 103.)

[3]   DEA's video surveillance did not capture the transaction in its entirety because much of the transaction unexpectedly transpired away from the surveillance location. (11/30 Tr. 75-76.)

[4]   Although the CS recorded the January 12, 2004
(continued...)

The next day, January 13, 2004, the CS purchased 1000 vials (73.7 grams) of crack from defendant. (Id. 85, 87; 12/1 Tr. 122-25; see also 12/1 Tr. 17.) The CS recorded the transaction; DEA conducted partial video surveillance.[5] The audio recordings from the CS's wire were played to the jury. (12/2 Tr. 5.) On the recording, a voice — identified as defendant's by the CS — is heard counting. (12/2 Tr. 9-10; 12/1 Tr. 122-25.) The CS testified that defendant was counting money he had handed to defendant in payment for the narcotics. (12/2 Tr. 9-10; 12/1 Tr. 122-25.) Later on the recording, defendant is heard saying to the CS: "[T]ake that bag, and let's get the F out of here." (12/2 Tr. 9-10; 12/1 Tr. 122-25.) The CS testified that the "bag" defendant referred to was the bag containing the 1000 vials of crack.[6] (12/2 Tr. 11.)

---

(...continued)
meeting, the recording proved unintelligible. (11/30 Tr. 85.) The district court, consequently, refused to admit the recording into evidence. (12/1 Tr. 141, 148.)

[5] As with the December 19, 2003 transaction, see supra note 3, DEA's video surveillance did not capture the entire transaction. SA Yant explained that the deal's location changed several times as it unfolded. (12/1 Tr. 83, 87.)

[6] In addition to the aforementioned, SA Yant testified regarding two other drug buys that purportedly occurred during the charged conspiracy. Both of those transactions involved defendant's co-conspirators; SA Yant testified, however, that defendant was not implicated in either of those incidents. (11/30 Tr. 124; 12/1 Tr. 4.)

After the January 13, 2004 transaction, the CS placed — at the DEA's direction — several recorded calls to defendant. (12/1 Tr. 133.) The district court admitted these recordings into evidence; they were played for the jury. (12/2 Tr. 14-17, 20.) As to each recorded call, the CS identified defendant's voice, as well as his own. (See id.)

In the first recorded call, the CS referenced "a thousand" and stated that "the stuff was good" in talking to defendant. (12/2 Tr. 14.) The CS testified that this was a reference to the January 13, 2004 buy. (12/2 Tr. 14-15; 12/1 Tr. 134.) The connection dropped and the call ended. During the second call, the CS asked defendant about whether he could get "2000" (which, the CS testified, was a reference to 2000 vials of crack). (12/2 Tr. 15-16.) Defendant refused to discuss the matter over the phone with the CS. (12/2 Tr. 15-16.)

In the third call, the CS tried to get defendant to agree to meet his "friend" (in reality, an undercover DEA agent). (12/2 Tr. 16; 12/1 Tr. 133-34.) Defendant, however, refused. (12/1 Tr. 134.) At some point in this conversation, the CS mentioned "fifteen hundred" — i.e., 1500 vials of crack (12/2 Tr. 18) — to which defendant responded: "[N]o, those things cannot be talked about over

the telephone." (12/2 Tr. 18.) During the fourth, and final, recorded call, the CS asked defendant to discount ten cents on each "nail." (12/2 Tr. 20.) The CS also referenced "fifteen hundred nails." (12/2 Tr. 20.) The CS testified that by "nail" he was referring to one vial of crack. (12/2 Tr. 20-21.)

Based on these conversations, as well as other DEA investigatory efforts, SA Yant applied for a Title III wiretap of defendant's phone number.[7] A U.S. District Judge granted SA Yant's application on March 25, 2004. (11/30 Tr. 105; see also 11/30 Tr. 100-04.) During the thirty-day wire tap, DEA intercepted and recorded several drug-trafficking related discussions on defendant's phone line. The district court admitted portions of these recorded calls, which were played for the jury. (E.g., 11/30 Tr. 107, 128 (co-defendant Omar Caraballo-García's arrest for possessing 13 vials of crack discussed by defendant and Arizmendi on defendant's wire); e.g., 11/30 Tr. 108, 124-25, 136 (seizure of 600 vials of crack from a suspected member of the Rivera organization – "Otto" – whose vehicle was used during the

---

[7] Title III of the Omnibus Crime Control and Safe Streets Act of 1968 is codified at 18 U.S.C. §§ 2510-22 (Title III). Authorities can apply "for an order authorizing or approving the interception of a wire, oral, or electronic communication" pursuant to the procedures set forth in 18 U.S.C. § 2518. 18 U.S.C. § 2518.

December 31, 2003 and January 13, 2004 drug transactions, discussed by defendant and Arizmendi on defendant's wire); see also, e.g., 11/30 Tr. 132-33 (conversation between defendant and Arizmendi regarding Joel Rivera having "2100"); 11/30 Tr. 138-39 (conversation between defendant and Joel Rivera regarding Otto's arrest after the 600-vial seizure).) Additionally, based on his investigation, SA Yant testified that his conservative estimation was that the Rivera organization sold 125 grams of crack per week between 2002-2005. (12/1 Tr. 4-5, 10.)

At the close of the government's case, defendant moved for a judgment of acquittal under Fed. R. Crim. P. 29. (12/2 Tr. 70.) The district court denied the motion, finding sufficient evidence had been introduced to support defendant's conviction on both Count 1 and Count 2. (12/2 Tr. 70.)

## II.

Under Fed. R. Crim. P. 29, we "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. We review a denial of a motion for acquittal "de novo to determine whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable inferences, viewed in the light most

-8-

favorable to the government, established each element of the particular offense beyond a reasonable doubt." United States v. Campbell, 268 F.3d 1, 6 (1st Cir. 2001).

To establish a violation of 21 U.S.C. § 846, the government must prove: "[1] the existence of a conspiracy, [2] the defendant's knowledge of the conspiracy, and [3] the defendant's knowing and voluntary participation in the conspiracy." United States v. Portalla, 496 F.3d 23, 26 (1st Cir. 2007). To establish a violation of 21 U.S.C. § 841, the government must prove that defendant: (1) possessed crack cocaine, "either actually or constructively," (2) "did so with a specific intent to distribute the [crack] cocaine over which [he] had actual or constructive possession," and (3) "did so knowingly and intentionally." United States v. Lopez-Lopez, 282 F.3d 1, 19 (1st Cir. 2002). Review of the record makes clear that the evidence introduced at trial adequately supported the jury's verdicts.

The recordings of the December 31, 2003 buy, the January 13, 2004 buy, and the calls between defendant and the CS (including the Title III calls) are likely sufficient — on their own — to support defendant's convictions on Count 1 and Count 2. We agree with the district court that defendant's voice — particularly on the January 13, 2004

-9-

recording and the Title III calls — constitutes compelling evidence of defendant's guilt. Even if, as defendant suggests, this evidence could be interpreted as non-incriminating, other evidence readily supported the jury's verdict. See Campbell, 268 F.3d at 6 (reviewing court must view the evidence in the light most favorable to the government).

The CS's testimony further evidenced defendant's guilt. The CS's testimony was corroborated by several sources, including the recorded conversations between the CS and defendant, as well as SA Yant's testimony. See, e.g., United States v. Vazquez Guadalupe, 407 F.3d 492, 499 (1st Cir. 2005) (case did not turn on the CS's testimony where there were "audio and video tapes, in which the defendants incriminated themselves"). Indeed, SA Yant's testimony, and the recorded conversation itself, track the CS's testimony. Cf. United States v. Andujar-Basco, 488 F.3d 549, 558 (1st Cir. 2007) (case hinged on the CS's testimony, but that testimony was "corroborated by several sources"). Taken together, the recorded conversations and the CS's testimony provided ample — even overwhelming — evidence from which a rational juror could have found defendant guilty beyond a reasonable doubt on both charges.

Contrary to defendant's position, the district

court did not err in permitting the CS to testify in light of his admitted marijuana use and compensation by DEA. Defendant failed to make a timely objection at trial.[8]  See United States v. Mangual-García, Nos. 05-2275, 05-2414, 2007 WL 2702973, at *5 (1st Cir. Sept. 18, 2007).  Defendant's "failure to object to the omission of such an express trial-end determination bars him from raising the point on appeal in the absence of plain error."  Id.; see also Fed. R. Crim. P. 52(b).  No plain error is evident here as defendant's position lacks merit.  See id.

The issues raised by defendant do not go to admissibility, but rather pertain to the credibility of the CS's testimony.  See United States v. Vázquez-Guadalupe, 407 F.3d 492, 499 (1st Cir. 2007) (deeming testimony of a government witness, a criminal defendant being paid by the government for his cooperation, admissible and noting the credibility of that testimony "is left for the jury").  The jury was free to — as it presumably did — credit the CS's testimony, notwithstanding his marijuana use and government compensation.  Id. (rejecting the argument that the "government cannot conduct sting operations using

_____

[8]  We note that while neither party addresses whether defendant objected to the CS's testimony on the grounds that he was compensated and used marijuana, our review of the transcript indicates that defendant failed to do so.

individuals who expect to receive . . . financial compensation in exchange for their cooperation").

Defendant's argument that the district court erred in allowing the CS to testify as to the December 19, 2003 deal is more compelling. See supra note 2. Specifically, defendant contends that this constituted prejudicial error given that the government did not: (1) charge the incident in the First Superceding Indictment; and (2) disclose the incident to defendant until trial was underway (i.e., long after discovery had concluded). Appellant's Br. 35 (citing Fed. R. Crim. P. 52).

As noted above, after trial began, the government informed the district court and defendant that the CS would testify that defendant was present at the December 19, 2003 buy. The parties do not contest that: (1) the government acted in good faith; (2) defendant timely objected to, and sought exclusion of, the CS's testimony regarding the December 19, 2003 buy; and (3) defendant did not seek a continuance. (See 12/1 Tr. 103.)

"We review the district court's evidentiary rulings as to preserved claims for abuse of discretion." United States v. Balsam, 203 F.3d 72, 84 (1st Cir. 2000). Further, "[a]s a general rule, a defendant who does not request a continuance will not be heard to complain on appeal that he

-12-

suffered prejudice as a result of late-arriving discovery." United States v. Manqual-García, Nos. 05-2275, 05-2414, 2007 WL 2702973, at *2 (1st Cir. Sept. 18, 2007); see generally United States v. Benedetti, 433 F.3d 111, 118 (1st Cir. 2005) ("We note in passing that, were surprise a genuine problem, 'the granting of a continuance is a more appropriate remedy than exclusion of the evidence.'" (quoting Fed. R. Evid. 403 advisory committee's note)).

In any event, defendant fails to explain how the late disclosure of defendant's presence during the December 19, 2003 incident constituted the "manifest abuse of discretion required to overturn the presider's decision to allow a criminal case to go forward, notwithstanding delayed disclosure of material relevant to impeachment of a witness." Manqual-García, 2007 WL 2702973, at *2. Though defendant did not have a great deal of time to prepare, he learned that the CS would testify that he was at the December 19, 2003 buy before the government concluded its direct examination of the CS (i.e., prior to defendant's cross-examination of the CS).

Defendant also argues that the First Superceding Indictment's silence regarding the December 19, 2003 buy requires this Court to reverse the verdicts. We disagree. First, the government "is not limited in its proof at trial

-13-

to those overt acts alleged in the indictment." See United States v. Muñoz-Franco, 487 F.3d 25, 53 (1st Cir. 2007) (internal quotation omitted).

Second, the underlying indictment's failure to reference the December 19, 2003 incident does not constitute a "prejudicial variance." See United States v. Cruz-Arroyo, 461 F.3d 69, 77 (1st Cir. 2006). A prejudicial variance constitutes one in which: (1) "the facts proved at trial differ from those alleged in the indictment"; and (2) the error "affects the defendant's substantial rights" (i.e., when the indictment fails to provide the "the defendant with sufficient detail to allow him to prepare a defense, avoid unfair surprise at trial, and plead double jeopardy when appropriate"). Id. Here, the First Superceding Indictment alleged that the conspiracy began in 1998 and continued until May 11, 2005 (the date the indictment issued). The indictment set forth: (1) the "nucleus of operative facts giving rise to the charges against the appellant"; (2) "listed some overt acts referable to the charged conspirac[y]; and (3) described the nature of the alleged agreement between the alleged co-conspirators." See, e.g., id. (finding no prejudicial variance occurred where the indictment at issue met these three criteria).

As explained above: (1) defendant failed to ask for

a continuance, or even an extended recess, prior to the CS's testimony; and (2) ample evidence existed of defendant's involvement in the charged conspiracy, aside from the December 19, 2003 incident, and the January 13, 2004 deal.

### III.

Defendant also maintains the district court improperly denied his motion for a new trial. See, e.g., Appellant's Br. 2. As outlined in our November 28, 2007 Order to Show Cause, however, defendant never filed any such motion.[9] We remain certain that no appellate jurisdiction lies over that portion of the appeal pertaining to defendant's Rule 33 "motion." Put simply: (1) defendant failed to properly present a motion for a new trial to the district court; and (2) thus, the district court had no opportunity to rule on the motion. See Fed. R. App. P. 4(b)(3)(B). Lacking appellate jurisdiction, we dismiss that portion of defendant's appeal pertaining to Rule 33. See Espinal-Dominguez v. Puerto Rico, 352 F.3d 490, 495 (1st

---

[9] While Document 145 on the district court's docket sheet is entitled "Motion for New Trial," the attached document does not pertain to this case. Effective February 24, 2004, pursuant to a previously entered standing order, the United States District Court for the District of Puerto Rico's official court record constitutes the electronic file maintained on the District's servers. See Standing Order No. 1 (In the Matter of Electronic Case Filing, Misc. No. 03-149 (HL)).

-15-

Cir. 2003) ("Even though the parties have assumed the existence of appellate jurisdiction, we enjoy no comparable luxury. Because federal courts are powerless to act in the absence of subject matter jurisdiction, we have an unflagging obligation to notice jurisdictional defects and to pursue them on our own initiative.").

Counsel for both parties bear responsibility for this egregious error. Accordingly, we feel compelled to comment at some length. Defense counsel failed to properly file a Rule 33 motion on behalf of his client, but nonetheless sought appeal on that ground. This – at best – amounted to gross ineptitude; at worst, it constituted an intentional effort to mislead this Court. We do not, however, pretend to know which is correct. Defendant's response to the Order to Show Cause, rather than explaining how this error occurred, simply states the painfully obvious: that the motion was "incorrectly filed." Appellant's Mot. in Resp. to Ct.'s Order to Show Cause ¶ 1.

Despite defendant's concession that no Rule 33 motion was filed in the district court, remarkably, defendant argues — without citation to a single legal authority — that "justice demands" that we address his Rule 33 arguments. (Id. ¶4.) Therein, defendant notes: (1) he timely filed his appeal pertaining to the non-existent Rule

33 order; (2) his Rule 29 and Rule 33 arguments were "essentially the same"; (3) both parties argued the case without recognizing that defendant failed to file a Rule 33 motion; and (4) this case presents — unspecified — "exceptional circumstances that excuse the [non] filing of the motion for new trial." (Id.) This is utter nonsense. We are a court of limited jurisdiction. See Espinal-Dominguez, 352 F.3d at 495. Appellate jurisdiction cannot be conferred by counsel's assertion that he intended, but admittedly failed, to file a Rule 33 motion. Id.

The government compounded the problem by obviously failing to review the record. The government's briefing, as well as its oral argument, responded to defendant's Rule 33 appeal on the merits. The government's response to the Order to Show Cause sheds little light on its actions. Therein, the government attempted to explain its conduct by noting: (1) "the defense never alleged on appeal that it had actually filed a Rule 33 motion in the district court;" and (2) defendant "simply argued on appeal that the [he] was entitled to a new trial as an alternative argument." Appellee's Mot. in Resp. to Order to Show Cause at 2 (emphasis added). Quite plainly, this reasoning is ludicrous.

Contrary to the government's puzzling

-17-

characterization, defendant's briefing and position at oral argument unambiguously referenced the "district court['s] . . . . error [in] denying appellant's motion for judgment of acquittal and his _motion_ _for_ _new_ _trial_." See, e.g., Appellant's Br. at 38 (emphasis added). In any event, what concerns us most about the government's response is that it misses the point entirely.

Counsel are bound by the American Bar Association's Model Rules of Professional Conduct (the Model Rules). 1st Cir. R. IV, at 106; _see also_ P.R. U.S. Dist. L.R. 83.5(a) (expressly incorporating the Model Rules). Therein, counsel owes their respective clients duties of, _inter_ _alia_, competence and diligence and they owe this Court a duty of candor. _See_ Model Rules of Prof'l Conduct R. 1.1, 1.3, 3.3. It is axiomatic that lawyers are obligated to scrupulously review the record on appeal, including the district court docket. When referring to documents purportedly filed in the district court — much less documents material to an appeal — counsel must verify that such documents exist. If they do not, obviously, immediate corrective action must be taken. None of these steps were taken here, at the considerable expense of judicial economy. Even more amazingly, counsel failed to recognize the severity of this situation or attempt to make amends even after the Order to

Show Cause issued.  As noted above, both parties' responses are nonsensical.  We underscore how deeply troubled we are by this unfortunate series of events.

IV.

For the forgoing reasons, we <u>affirm</u> the district court's denial of defendant's Rule 29 motion.  We <u>dismiss</u> the Rule 33 arguments raised by defendant on appeal.

Affirmed in part, dismissed in part.