# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  v.

MICHAEL CARLOS GONZALEZ,
   *Defendant-Appellant.*

No. 07-10326

D.C. No.
CR-06-00152-JMR

OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued and Submitted
May 13, 2008—San Francisco, California

Filed June 19, 2008

Before: Betty B. Fletcher and Pamela Ann Rymer,
Circuit Judges, and Kevin Thomas Duffy,* District Judge.

Opinion by Judge B. Fletcher

*The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

## COUNSEL

T.S. Hartzell, Attorney at Law, Tucson, Arizona, for the defendant-appellant.

Bradley W. Giles, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

---

## OPINION

B. FLETCHER, Circuit Judge:

Michael Gonzalez, a Border Patrol agent, appeals his jury conviction for possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and for use of a firearm in furtherance of that drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(I). Gonzalez, in uniform and carrying his service-issued sidearm, was caught on videotape stealing a distribution quantity of marijuana, while purporting to assist an Arizona Department of Public Safety ("DPS") officer with a traffic stop. A jury found that the weight of the stolen marijuana was 10 kilograms. Gonzalez challenges the district court's denial of judgment of acquittal on both counts and its denial of a motion to dismiss the firearm charge for lack of jurisdiction and failure to state an offense. He further challenges the district court's adoption of the jury's finding regarding the weight of the stolen marijuana. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## I.   Factual background and procedural posture

Arizona DPS Officer Duckett stopped a pickup truck on a state highway in a remote desert area frequently used as a narcotics trafficking corridor. The driver and a passenger fled after the stop, abandoning the vehicle and its contents. Concealed within the bed of the truck were thirty bales of marijuana. When Officer Duckett activated his emergency lights, the dashboard-mounted video camera in his patrol car automatically initiated recording. Soon after Officer Duckett stopped the vehicle, three Border Patrol agents, dressed in

civilian clothing and driving a personal vehicle, also stopped, identified themselves by showing their badges and guns, and offered assistance in the chase after the truck's occupants. Two agents pursued the occupants immediately. Officer Duckett then joined the chase with his service canine, leaving the third Border Patrol agent, Agent Rogers, behind to protect the vehicle and marijuana after performing a visual check to verify Rogers' credentials and his possession of a firearm. Gonzalez then arrived in uniform driving a marked Border Patrol vehicle and carrying his service-issued Baretta .40 caliber sidearm on his hip. After Gonzalez and Rogers conferred and inspected the vehicle together, Gonzalez told Rogers that he thought he heard a gun shot. Rogers left the area to investigate, entrusting Gonzalez to guard the vehicle and the marijuana.

The videotape shows that during the short period Gonzalez was left alone with the vehicle, he removed one bale of marijuana from the bed of the pickup truck, rearranged the other bales to fill in the space left by the removed bale, and placed it in the trunk of his service vehicle. Agent Rogers returned, having found no evidence of shots fired. Shortly after taking the marijuana, Gonzalez made several cell phone calls to a relative who had been convicted for marijuana distribution in 1992. Of the thirty bales, the twenty-nine remaining in the truck were later weighed and found to weigh a total of about 304 kilograms, with an average weight per bale of 10.5 kilograms.

Gonzalez's theft of the marijuana was discovered thirteen days later during a routine review of video footage. An agent from the Department of Homeland Security Office of Inspector General ("OIG") was called in to investigate. The OIG agent questioned Gonzalez, confronting him with the videotape. On the day he was questioned by the OIG agent, Gonzalez resigned from the Border Patrol and surrendered his badge and weapon.

At his four-day trial, Gonzalez testified that he was not acting in his lawful capacity as a law enforcement officer when he took the marijuana bale and that based on his experience, he knew it was marijuana. He also testified that he did not know he was being videotaped. He did not object to the prosecutor's assertion that the bale weighed a little more than 10 kilograms. Photographs of several scenes from the videotape were admitted into evidence. They showed Gonzalez, with his face clearly visible, removing a bale, placing it into his service vehicle, and rearranging the remaining bales. Gonzalez filed a motion for judgment of acquittal at the close of the government's case.

The jury convicted Gonzalez of possession with intent to distribute less than 50 kilograms of marijuana (resulting in a 30-month sentence), and use of a firearm in furtherance of that drug trafficking offense (resulting in a consecutive 60-month mandatory-minimum sentence). Responding to an interrogatory, it also found beyond a reasonable doubt that the weight of the marijuana was 10 kilograms. After the jury verdict, Gonzalez filed a motion for judgment of acquittal, and a motion to dismiss the firearm charge for lack of jurisdiction, both of which were denied. Gonzalez was sentenced consecutively for a total term of 90 months, a 36-month term of supervised release and a fine of $30,000. He timely appealed from the sentence and conviction. Gonzalez filed a written motion within seven days of the date of the verdict renewing his earlier motion for judgment of acquittal after the close of the government's case.

## II.   Motions for judgment of acquittal.

### A)   Post-verdict motion to renew a judgment for acquittal.

In order to preserve the sufficiency of the evidence issue on appeal, the defendant must move for a judgment of acquittal during the trial pursuant to Fed. R. Crim. P. 29(a). Gonzalez

filed a motion for judgment of acquittal at the close of the government's case but did not move for a judgment of acquittal at the close of all of the evidence. The government argues that for this reason, we may review his sufficiency of the evidence claim only to prevent a manifest miscarriage of justice or for plain error. *See United States v. Ross*, 338 F.3d 1054, 1057 (9th Cir. 2003), *cert. denied*, 540 U.S. 1168 (2004). However, we have traditionally imposed this higher standard of review only in cases where a motion for judgment of acquittal is never renewed. *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1200-1201 (9th Cir. 2000). Here, Gonzalez did renew his earlier motion for judgment of acquittal by filing a written motion within seven days of the date of the verdict.

[1] We have not squarely addressed whether, as here, a timely post-trial motion for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29(c)(1) preserves a sufficiency claim for appellate review.[1] The First and Fifth Circuits have addressed the issue and held that a Rule 29(c) motion does preserve a sufficiency claim. *See United States v. Castro-Lara*, 970 F.2d 976, 980 (1st Cir. 1992) (movant under Rule 29(c) is "entitled to the benefit of the same standard of appellate review" as movant under Rule 29(a)); *United States v. Allison*, 616 F.2d 779, 784 (5th Cir. 1980) (per curiam) ("Under Rule 29(c) of the Federal Rules of Criminal Procedure, [the defendant] has preserved her right of appellate review."), *cert. denied,* 449 U.S. 857 (1980); *see also United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir. 1992) (defendant waives sufficiency claim by "fail[ing] to renew his motion for acquittal at the

---

[1]In relevant part, the rule provides that "(1) A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict . . . (2) If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal . . . (3) A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." Fed. R. Crim. P. 29(c).

close of trial or within seven days after the verdict pursuant to Federal Rule of Criminal Procedure 29(c).").

[2] We now join our sister circuits in holding that a timely post-verdict motion under Rule 29(c)(1), renewing an earlier motion for judgment of acquittal after the close of the government's case at trial, constitutes a sufficient "renewal" of the motion to preserve the issue for de novo appellate review. The rule specifically provides that a defendant may renew a motion for acquittal "within 7 days after a guilty verdict" and "is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." Fed. R. Crim. P. 29(c). We read this provision to state that even absent any motion for judgment of acquittal at trial, a defendant who files a timely post-trial motion for acquittal stands on the same footing—and is entitled to the benefit of the same standard of appellate review—as a defendant who moves for acquittal at the close of all the evidence. *See Castro-Lara*, 970 F.2d at 976*; Allison*, 616 F.2d at 784; *see also* 2A Charles A. Wright, Federal Practice and Procedure § 465 (2008).

[3] Because Gonzalez's post-trial motion for acquittal was timely—it was filed within seven days of the date of the verdict—there was no waiver; he is entitled to review for sufficiency of evidence. There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When a claim of sufficiency of the evidence is preserved by making a motion for acquittal at the close of the evidence, this court reviews the district court's denial of the motion de novo. *See United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005). We now apply this standard to review the district court's denial of judgment of acquittal on both counts.

**B)   Motions for judgment of acquittal on the 18 U.S.C. § 924(c) charge.**

[4] The government may prove a § 924(c) offense by either proving that the defendant carried or used a firearm "in relation to" a drug trafficking crime, or that the defendant possessed a firearm "in furtherance" of that crime.[2] Here, the government showed that Gonzalez's possession of the firearm during the drug trafficking offense was "in furtherance" of the offense.[3] Whether the "in furtherance" requirement is met is a "fact-based inquiry into the nexus between possession of the firearm and the drug crime[,]" including such factors as "proximity, accessibility and strategic location of the firearms in relation to the locus of drug activities." *United States v. Hector*, 474 F.3d 1150, 1156-57 (9th Cir. 2007) (internal citation omitted).

The central question before us is whether the gun that Gonzalez possessed for legitimate purposes was sufficiently used in furtherance of the drug trafficking offense to invoke

[2]The statute provides that a person "who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime (i) be sentenced to a term of imprisonment of not less than 5 years . . . ." 18 U.S.C. § 924(c).

[3]In *Bailey v. United States*, 516 U.S. 137 (1995), the Supreme Court held that punishment under 18 U.S.C. § 924(c), which at the time pertained to those who used or carried a firearm, required "evidence sufficient to show an *active employment* of the firearm." *Id.* at 143 (emphasis in original). The relevant portion of 18 U.S.C. § 924(c) has been amended—in direct response to *Bailey*—to include mere possession in furtherance of a drug trafficking crime. *See, e.g. United States v. Grace*, 367 F.3d 29, 34-35 (1st Cir. 2004) (explaining that "[i]n 1998, Congress amended 18 U.S.C. § 924(c)(1)(A) to preserve a mandatory minimum consecutive sentence" without requiring "defendants to have actively employed the firearm in furtherance of the drug crime; however, they must have possessed the gun to further the drug crime . . . .").

§ 924(c) or whether, as Gonzalez claims, it was simply an accoutrement of his uniform that played no part in his theft of the marijuana. As the district court noted, other circuit courts have sustained § 924(c) convictions against on-duty officers who possessed service-issued weapons during the commission of a predicate felony offense. *See e.g.*, *United States v. Patterson*, 348 F.3d 218 (7th Cir. 2003); *United States v. Vasquez-Guadalupe*, 407 F.3d 492 (1st Cir. 2005); *United States v. Villafane-Jiminez*, 410 F.3d 74 (1st. Cir. 2005); *United States v. Guidry*, 456 F.3d 493 (5th Cir. 2006)). We, too, are satisfied that a sufficient nexus exists between Gonzalez's possession of the firearm and the commission of the predicate felony drug-trafficking offense to sustain his § 924(c) conviction.

**[5]** Congress intended § 924(c) to apply when police officers, or in this case, Border Patrol agents abuse the privilege of carrying a firearm by committing a crime with the weapon. *See United States v. Contreras*, 950 F.2d 232, 241 (5th Cir. 1991) (citing S.Rep. No. 225, 98th Cong., 2d Sess. 315 n.10 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3492 n.10). However, courts have recognized that § 924(c) is not automatically violated any time a uniformed law enforcement officer commits a drug trafficking crime. *See, e.g. Vasquez-Guadalupe*, 407 F.3d at 500 n.4 (1st Cir. 2005) (quoting *Castro-Lara*, 970 F.2d at 983). There must be more to trigger a violation of § 924(c). "The phrase 'in relation to' . . . clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence . . . . [T]he gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense." *Smith v. United States*, 508 U.S. 223, 238 (1993) (internal quotations omitted). A gun possessed for legitimate purposes will nonetheless invoke § 924(c) if, for example, a defendant intends to have it available as a device to lend courage during a drug-trafficking offense. *Vasquez-Guadalupe*, 407 F.3d at 500 n.4.

Under Gonzalez's view, the evidence was insufficient to prove that his possession of a firearm was for the purpose of

facilitating his theft of the marijuana. To support this contention, he testified that Officer Rogers knew him, that they saw each other regularly and that for this reason alone, Rogers would have trusted him to watch the truck. Thus, he submits that the government failed to demonstrate that his possession of a firearm was more than a mere coincidence. We disagree.

[6] The government presented sufficient evidence for a rational jury to find that Gonzalez possessed a firearm in relation to his theft of the marijuana. Agent Rogers testified that he never would have left Gonzalez alone with the marijuana had he been unarmed, because doing so would have put Gonzalez in danger. Agent Rogers testified that he had safety concerns when leaving Gonzalez alone with the vehicle because the occupants could have come back for the marijuana or another vehicle could have ambushed him. He further testified he would not leave an unarmed officer alone to protect a load of marijuana and that the fact that Gonzalez had a gun was "crucial" to his decision to leave Gonzalez there alone.

[7] Gonzalez himself admitted that he thought drug trafficking was a dangerous activity and that having a service weapon protected him. Gonzalez's own testimony tends to show that the weapon emboldened him and allowed him to take control of the marijuana load, lent him an air of legitimacy, and reduced the chance that he would be interrupted. Thus, sufficient evidence in the record supports Gonzalez's jury conviction for possession of a firearm "in furtherance" of a drug trafficking offense. Accordingly, we conclude that the district court did not err in denying Gonzalez's motions for judgment of acquittal on the § 924(c) count.

## C) Motions for judgment of acquittal on the 21 U.S.C. § 841 charge.

[8] Gonzalez maintains that the government failed to prove intent to distribute and that it presented insufficient evidence to prove that he possessed marijuana at all. To support a con-

viction under 21 U.S.C. § 841(a),[4] the government must prove that Gonzalez knowingly possessed marijuana with intent to distribute. *See United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000). Like the knowledge requirement, the intent to distribute may be inferred. *United States v. Davila-Escovedo*, 36 F.3d 840, 843 (9th Cir. 1994).

**[9]** Gonzalez possessed the marijuana: he admitted taking the bale both to the OIG agent and at trial. The admission was corroborated by the videotape and by the fact that the twenty-nine recovered bales tested positive for marijuana. Further, expert testimony established that the quantity of marijuana stolen, approximately 10 kilograms, was a distribution amount as opposed to a typically smaller personal-use amount. Evidence showed that Gonzalez made several cell phone calls to his relative, a convicted marijuana distributor. The jury heard Gonzalez's assurances that he intended to report the seizure to Border Patrol and file the appropriate paperwork, but that he never did. In addition, the jury heard Gonzalez testify that he dumped the bale roadside and planned to retrieve it, but that the he never did, and that the bale was never retrieved. Viewing the evidence in the light most favorable to the government, we conclude sufficient evidence supports Gonzalez' jury conviction for possession with intent to distribute less than 50 kilograms of marijuana. Accordingly, the district court did not err in denying Gonzalez's motions for judgment of acquittal on the § 841 count.

### III. Motion to dismiss the 18 U.S.C. § 924(c) charge for lack of jurisdiction and failure to state an offense.

We review jurisdictional issues de novo. *United States v.*

---

[4]The statute provides "[I]t shall be unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." 21 U.S.C. § 841(a).

*Phillips*, 367 F.3d 846, 854 (9th Cir. 2004). 18 U.S.C. § 925(a)(1),**[5]** a statutory section entitled "Relief from disabilities," exempts firearms issued for the use of a United States department or agency from the prohibitions of Chapter 44 of the U.S. Code. Gonzalez argues that because his weapon was issued to and for the Border Patrol, any use of that weapon whatsoever is categorically exempted from possible prosecution under § 924(c). His reliance on § 925(a)(1) is misplaced; it is simply inapplicable to his case.

**[10]** Under 18 U.S.C. § 922, certain individuals are prohibited or "disabled" from possessing firearms. Section 925(a)(1) allows some individuals—armed forces members and law enforcement—relief from that prohibition and allows them to carry firearms in connection with their public responsibilities despite the prohibitions of § 922. *See, e.g. United States v. Lewitze*, 176 F.3d 1022, 1027 n.4. (7th Cir. 1999). This provision has no application to an individual like Gonzalez, who was never prohibited in the first instance from possessing firearms under § 922. Thus, § 925(a)(1) has no effect on the government's ability to prosecute Gonzalez for a § 924(c) offense. *See also United States v. Cruz*, 50 F.3d 714, 716 (9th Cir. 1995) ("While § 925(a)(1) excepts use of a firearm for a government purpose . . . it does not permanently exempt those firearms from the federal gun laws.") The district court did not err in denying Gonzalez's motion to dismiss the firearm charge.

---

**[5]**The statute provides that "[t]he provisions of this chapter . . . shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof." 18 U.S.C. § 925(a)(1).

## IV. The district court's adoption of the jury's finding regarding the weight of the stolen marijuana.

We review factual findings made during sentencing, including a determination of the quantity of drugs involved in an offense, for clear error. *United States v. Asagba*, 77 F.3d 324, 325 (9th Cir. 1996). The district court at sentencing must find drug quantities by a preponderance of the evidence through sufficiently reliable information. *United States v. Kilby*, 443 F.3d 1135, 1140-41 (9th Cir. 2006). The district court must err on the side of caution when approximating drug quantities. *Id.*

Gonzalez argues that a finding of a smaller weight would result in a lower base offense level thereby requiring the court to err on the side of caution to find that the stolen bale weighed no more than the lightest bale, which weighed only 8.4 kilograms according to the government's testimony. In further challenging the weight, Gonzalez also highlights expert testimony suggesting that wrappers can be heavy and sometimes include grease or coffee.

The record reflects that of the thirty bales, the twenty-nine remaining in the truck weighed about 304 kilograms together and had an average weight of 10.5 kilograms, which is a "distribution weight" of marijuana. Gonzalez is correct to suggest that the actual weight of the stolen bale could have been below or above average weight of all the seized bales.

However, the jury found, beyond a reasonable doubt when answering the interrogatory, that the bale was roughly ten kilograms in weight after deducting an assumed wrapper weight of 500 grams. Officer Duckett testified that the average weight of the other roughly consistently sized bales was 10.5 kilograms. The jury saw the video showing Gonzalez stealing the bale, photographs of the similarly sized bales with weights of more than ten kilograms written on them by the smugglers, and the government form that tracked the weights

of the seized bales. Further, Gonzalez testified upon cross-examination that although he estimated the load to be lighter, he had no reason to contest the jury's finding as to the weight.

**[11]** The district court found drug quantities by a preponderance of the evidence aided by the jury's answer to the interrogatory. Accordingly, we conclude that the district court did not clearly err in accepting the jury's conclusion that the bale Gonzalez took weighed ten kilograms. *See Kilby*, 443 F.3d at 1140-41.

**AFFIRMED.**