**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CORY MICHAEL EGLASH,
*Defendant-Appellant*.

No. 14-30132

D.C. No.
2:13-cr-00040-RSM-2

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
May 6, 2015—Seattle, Washington

Filed February 17, 2016

Before: J. Clifford Wallace, Andrew J. Kleinfeld,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen;
Concurrence by Judge Kleinfeld;
Partial Concurrence and Partial Dissent by Judge Wallace

## SUMMARY[*]

**Criminal Law**

The panel affirmed in part and reversed in part the district court's judgment in a case in which the defendant claimed that the evidence presented to support two mail fraud counts was insufficient to show that the underlying mailings furthered his fraudulent scheme to receive disability benefits.

The panel affirmed the district court's judgment on Count 4, which arose out of a notice of disability award mailed by the Social Security Administration, because the notice—which marked the last step before the defendant's girlfriend would receive disability benefit payments, the goal of her fraudulent plan with the defendant—was a contemplated, necessary step in the fraudulent scheme.

The panel reversed the district court's conviction on Count 6, which pertained to a disability application summary that the SSA mailed to the defendant, because the fraud the defendant envisioned was neither dependent upon nor furthered by the Government's decision to transcribe, in summary form, the fraudulent statements he made when he talked to the SSA.

The panel affirmed the defendant's convictions on four other counts in a memorandum disposition.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Kleinfeld concurred with regard to affirming the conviction on Count 4 as compelled by *United States v. Brown*, 771 F.3d 1149 (9th Cir. 2014). He wrote that this case should be reheard en banc to correct *Brown*'s mistaken interpretation of the mail fraud statute and *Schmuck v. United States*, 489 U.S. 705 (1989), because the SSA's mailing of the notice of award to the defendant cannot be characterized as "part of the execution" of the defendant's scheme.

Judge Wallace concurred and dissented. He agreed with the majority that *Brown* controls with regard to Count 4, and wrote that it is sufficient for the mailing to be "*incident to* an essential part of the scheme." He would affirm the conviction on Count 6. He wrote that it is enough that the scheme conceived of by the perpetrator include the mailing as part of its normal execution, and that the jury could have reasonably found that the SSA's mailing of the application summary was incident to an essential part of the defendant's scheme.

---

## COUNSEL

Theresa DeMonte (argued) and Andrea D. Ostrovsky, Calfo Harrigan Leyh & Eakes LLP, Seattle, Washington, for Defendant-Appellant.

Thomas Merton Woods (argued) and Seth Wilkinson, Assistant United States Attorneys; and Annette L. Hayes, Acting United States Attorney, Western District of Washington, Seattle, Washington, for Plaintiff-Appellee.

---

## OPINION

CHRISTEN, Circuit Judge:

After a jury trial, Cory Michael Eglash was convicted of four counts of mail fraud under 18 U.S.C. § 1341. Eglash appeals from the judgment. He argues that, for his mail fraud convictions on Counts 4 and 6, there is insufficient evidence showing the underlying mailings furthered his fraudulent scheme.[1] We affirm in part and reverse in part.

## BACKGROUND

In 2010, Eglash and his girlfriend, Ramona Hayes, moved to San Juan Island, Washington. From 2010 to 2012, Eglash and Hayes ran a coffee shop. During the same period, Eglash also worked part time at an aquarium, volunteered at a senior center, and participated in a full-court basketball league.

In January 2011, Hayes submitted an application for disability benefits to the Social Security Administration ("SSA"), claiming that she had been unable to work since 2007 due to anxiety, manic depression, and other mental health issues. She identified Eglash as an individual who could speak to her disability. In response to a mailed request from the SSA, Eglash submitted a third party function report in which he indicated that he was Hayes's "caregiver." Eglash claimed that Hayes could not "function normally" or

---

[1] In a separate memorandum disposition issued concurrently, we address Eglash's other arguments and affirm his convictions for one count of conspiracy to defraud the United States under 18 U.S.C. § 286, one count of making a false statement to the United States under 18 U.S.C. § 1001(a)(2), and two other counts of mail fraud under 18 U.S.C. § 1341.

"drive or go outside alone," and that he "seriously doubt[ed] that today [Hayes] could work in a retail store on a part time basis, or actually put gas in a car."

In July 2011, SSA notified Hayes by mail that it had approved her application for benefits. The agency paid Hayes $20,740 in retroactive benefit payments and awarded her prospective monthly payments of $1,074.

On November 29, 2011, Eglash applied for disability benefits for himself. In December 2011, Eglash mailed to SSA a function report claiming that he "cannot stand or sit for any length of time [and] . . . cannot walk more than 100–200 y[ar]ds," that he was "almost home bound," and that "most of [his] hobbies were sports related and have now ceased due to [his] condition(s)."

In January 2012, after processing his application, SSA sent Eglash a mailing titled "Application Summary for Disability Insurance Benefits." The top of the mailing informed Eglash: "On November 29, 2011, we talked with you and completed your application for SOCIAL SECURITY BENEFITS. We stored this information electronically in our records. We are enclosing a summary of your statements." The rest of the mailing listed the statements Eglash made when he talked to SSA on November 29, 2011.

SSA special agents subsequently engaged in an undercover operation during which different agents visited Eglash's and Hayes' coffee shop eight times. The agents engaged in conversation with Eglash and Hayes and recorded their interactions. The agents observed Eglash and Hayes prepare and serve meals and drinks to customers without any sign of disability. They noted that Eglash's "movements

were fluid and normal with no indication of discomfort," and Hayes was "personable," "gregarious," and "very pleasant." On the agent's undercover video, Eglash claims that he walks everywhere, enjoys long bike rides, and sometimes plays basketball. He also says that he works at the coffee shop every day from 7 am to 5 pm and boasts about how he was the most efficient volunteer to paint a local church. And contrary to Eglash's claim to SSA that Hayes could not drive or go outside alone, the video shows Hayes walking out of the coffee shop alone while telling Eglash that she was about to drive to a business meeting.

The Government later discovered additional evidence contradicting Eglash's and Hayes's claims of disability, such as proof that Eglash played full court basketball once or twice weekly, including the week he applied for disability, and that he worked part time at a local aquarium and volunteered regularly in a senior center.

Eglash and Hayes were indicted on various criminal charges, including five counts of mail fraud pursuant to 18 U.S.C. § 1341. After the Government voluntarily dismissed one of the mail fraud counts, Eglash proceeded to trial on the remaining four. Count 4 charged mail fraud based on the notice of disability award that the SSA sent Hayes in July 2011. Count 6 charged mail fraud based on the summary of statements Eglash made when he talked to SSA on November 29, 2011. The summary was mailed to Eglash in January 2012.

At trial, Eglash did not challenge much of the Government's evidence but instead asserted a good faith defense, claiming that he did not believe his work constituted "substantial gainful activity." The jury convicted Eglash of

all mail fraud counts. Eglash moved for a judgment of acquittal, challenging the sufficiency of the evidence and arguing that the Government did not prove that the mailings underlying Counts 4 and 6 furthered a fraudulent scheme. The district court orally denied the motion during its sentencing hearing, and Eglash timely appeals. We have jurisdiction under 28 U.S.C. § 1291.

## LEGAL STANDARD and STANDARD OF REVIEW

"There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008). "When a claim of sufficiency of the evidence is preserved by making a motion for acquittal at the close of evidence, this court reviews the district court's denial of the motion de novo." *Id.*

## DISCUSSION

Eglash claims the district court erred by denying his motion for judgment of acquittal on mail fraud Counts 4 and 6 because the underlying mailings were not shown to further a fraudulent scheme to receive disability benefits.

"There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 (1989). "The relevant question at all times is whether the mailing is part of the execution of the scheme

as conceived by the perpetrator at the time, regardless of whether the mailing later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud." *Id.* at 715. We have held that where "'the execution of the scheme as conceived by' [the defendant] depended" on a mailing, that mailing constitutes "an 'essential step'" of the scheme and offers sufficient basis for a mail fraud conviction. *United States v. Jinian*, 753 F.3d 954, 963 (9th Cir. 2013) (quoting *Schmuck*, 489 U.S. at 715).

We recently revisited this framework in *United States v. Brown*, 771 F.3d 1149 (9th Cir. 2014). *Brown* concerned a scheme in which the defendant's bankruptcy petition falsely claimed little or no income in recent years, underreported assets, and listed a fictitious loan for $2.5 million. *Id.* at 1153. As a result of the false claims in the petition, the bankruptcy trustee abandoned efforts to recover debts owed to creditors and the defendant received a discharge. *Id.* We relied on *Schmuck* and observed that the Government had introduced evidence establishing notice of discharge "is essential to the bankruptcy process and a discharge is 'the golden ring that people want in a bankruptcy. It's a declaration that all debts that are dischargeable are discharged and the debtor no longer personally owned any of the debt.'" *Id.* at 1158. In light of this evidence, we concluded "[t]here was sufficient evidence of the mailings' importance to [the] bankruptcy fraud scheme" and the court's "mailing of the bankruptcy notices was 'incident to an essential part of the scheme, or a step in the plot.'" *Id.* (quoting *Schmuck*, 489 U.S. at 711).

In the instant case, Count 4 arises from the notice of disability award that SSA mailed to Hayes. That mailing informed Hayes that the agency had determined that she was

"entitled to monthly disability benefits beginning November 2009." It also indicated that Hayes would receive prospective monthly payments and retroactive payments for qualifying past months. Hayes and Eglash designed their scheme in the hope of defrauding the Government into paying them disability benefits, and Eglash offered false statements to support Hayes's application and perpetuate the scheme. The result here is compelled by our decision in *Brown*. The notice of discharge in *Brown* was the penultimate step in the fraudulent scheme because the notice enabled the defendant to evade his debts to his creditors, which was his ultimate goal. Similarly, the notice of disability award marked the last step before Hayes would receive disability benefit payments, the goal of her fraudulent plan with Eglash. Although the Government, not the defendant, mailed the notice of discharge in *Brown* and the notice of disability award here, each mailing was a contemplated, necessary step in its respective scheme. Like the notice of discharge, the notice of award was the "golden ring" in Eglash's plot and "'incident to an essential part of the scheme.'" *Id.* (quoting *Schmuck*, 489 U.S. at 711). We therefore affirm the district court's judgment on Count 4.

Count 6 pertains to the application summary that SSA mailed to Eglash in January 2012. The summary recounts the statements that Eglash made on November 29, 2011, when he applied for his own disability benefits. The letter states: "We stored this information electronically in our records. We are enclosing a summary of your statements." It did not require Eglash to take any action.

There is no indication that the scheme, as Eglash conceived it, contemplated or depended on receiving such a summary. Nor was the summary necessary to bring the

scheme to fruition because Eglash's fraudulent statements had already been entered and saved in SSA's records. Finally, the SSA did not require that Eglash sign and return the summary, or do anything else with it, in order to complete his application for benefits.  *See Schmuck*, 489 U.S. at 715; *United States v. Jinian*, 725 F.3d 954, 963 (9th Cir. 2013).  In short, the evidence did not show that printing and mailing the summary furthered any part of Eglash's scheme.  For this reason, the Government's position at oral argument—that it could issue such a mailing repeatedly and charge a separate count of mail fraud for each of its duplicate mailings—is wrong.    The summary may have been a predictable consequence of Eglash's fraudulent application, but the fraud he envisioned was neither dependent upon nor furthered by the Government's decision to transcribe, in summary form, the fraudulent statements he made when he talked to SSA on November 29, 2011.[2]  Because the underlying mailing was not "part of the execution of the scheme as conceived by the perpetrator at the time," *Schmuck*, 489 U.S. at 715, and because it did nothing to further the scheme, we reverse Eglash's mail fraud conviction on Count 6.

---

[2] The dissent argues this reasoning cannot be reconciled with our reasoning on Count 4.  We disagree.  Count 4 falls very close to the line of permissible mail fraud prosecutions, but we ultimately affirm the conviction on that count because the notice of disability, like the mailings at issue in *Brown* and *United States v. Mitchell*, was "required to consummate the scheme."  *United States v. Mitchell*, 744 F.2d 701, 704 (9th Cir. 1984); *see also Brown*, 771 F.3d at 1158.  By contrast, the summary mailing at issue in Count 6 was not required to consummate Eglash's fraud: Eglash had already telephonically communicated his false information to SSA, and SSA had stored the information electronically. The summary mailing merely memorialized that this step had been taken. In this critical way, Counts 4 and 6 differ.

## CONCLUSION

We affirm the district court's judgment on Count 4 of Eglash's mail fraud convictions, but reverse on Count 6.[3] We remand for further proceedings consistent with this opinion.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

---

KLEINFELD, Senior Circuit Judge, concurring:

I concur in Judge Christen's opinion.

My concurrence with regard to affirming the conviction on count 4 depends on a recent decision of our court that is mistaken. Count 4 charges mail fraud based on the notice of award that the Social Security Administration mailed to Eglash. It does not refer to any mailing that Eglash made or caused another to make, in the sense required by the mail fraud statute. I agree with Judge Christen that our decision in *United States v. Brown*[1] compels the result in this case. But *Brown*, I think, is a mistaken interpretation of the statute and the controlling Supreme Court case, *Schmuck v. United States*.[2] Since a three judge panel cannot correct mistaken

---

[3] Eglash's motion for judicial notice is granted.

[1] 771 F.3d 1149, 1158 (9th Cir. 2014).

[2] 489 U.S. 705, 712 (1989).

circuit law,[3] we ought to rehear this case en banc to correct *Brown*'s error.

The mail fraud statute criminalizes "plac[ing] in any post office . . . any matter or thing to be sent or delivered" or "knowingly caus[ing] to be delivered . . . any such matter or thing." The mailing has to be "for the purpose of executing" the fraudulent scheme.[4] That is a reasonably plain spoken way of saying that to commit the crime, the criminal has to put the thing in the mail or cause it to be mailed, and that the mailing has to be for "executing" the scheme. The word "executing" implies that the mailing has to be for the purpose of defrauding. That is, the thing mailed has to be an instrument accomplishing the fraud, not the fruit of the fraud.

And indeed, that is what *Schmuck* holds. Schmuck wholesaled used cars to used car dealers. He rolled back the odometers to make the price higher. What made *Schmuck* more debatable than the usual mail fraud case was that the mailings were by Schmuck's duped customers, the innocent used car dealers, not by Schmuck. They, not Schmuck, sent the state Department of Transportation applications for title showing the false odometer numbers.[5] This distinguished *Schmuck* from the more common case where the "causes to be delivered" statutory phrase means the criminal had an employee or associate put the envelope in the mail.

---

[3] *United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992) ("as a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel").

[4] 18 U.S.C. § 1341 (2012).

[5] *Schmuck*, 489 U.S. at 707.

Our decision today, applying our decision in *Brown*, holds that Eglash was guilty of mail fraud based on the Social Security Administration's mailing of the notice that the fraudulently obtained disability award had been granted. The explanation of the holding is that "the notice of award was the 'golden ring' in Eglash's plot and 'incident to an essential part of the scheme.'" That *Brown* analysis conflicts with *Schmuck*. Precisely *because* the disability award and notice of it were the fruit of Eglash's fraud, the "golden ring" obtained thereby, the notice was *not*, as the statute requires, a means of "executing" the fraud.

In *Schmuck*, by contrast, the Court held that a "rational jury could have found that the title-registration mailings were *part of the execution* of the fraudulent scheme, a scheme *which did not reach fruition* until the retail dealers resold the cars and effected transfers of titles."[6] (emphasis added) The state's mailings in *Schmuck* were "incident to an essential part of the scheme" in the sense that perpetuation of the scheme, by which Schmuck overpriced many cars over a long period, depended on the retail dealers' ability to get title transferred to the consumers.[7] The four justice dissent thought that even the *Schmuck* majority had gone too far in allowing the statute to be so used, because the Court had held in *Kann v. United States*[8] that it reached "only 'those limited instances in which the use of the mails is a *part of the execution of the fraud*,'" and disagreed with the majority's view that perpetuation of Schmuck's scheme required that the

---

[6] *Id.* at 712.

[7] *Id.*

[8] *Kann v. United States*, 323 U.S. 88 (1944).

dealers be lulled by successful transfers of title to their customers.[9] (emphasis in the original)  Eglash's conviction goes well beyond Schmuck's, and renders the "executing" term in the statute meaningless.

The Court in *Schmuck* distinguished, and did not overrule, *United States v. Maze*.[10]  *Maze* is still good law.[11]  *Maze*, applying the Court's earlier decision in *Kann v. United States*, held that the mailings must be "for the purpose of executing the scheme," not when the scheme "had reached fruition."[12] The notice of award the Social Security Administration mailed was precisely the fruit of Eglash's fraud, obtained when his scheme "had reached fruition," and not a mailing "for the purpose of *executing*"[13] the obtaining of the undeserved disability award.[14] (emphasis added).   Under *Maze* and *Schmuck*, Eglash's convictions on count 4 as well as count 6 ought to be vacated.

The Social Security Administration's mailing of the notice of award to Eglash cannot be characterized as "part of the execution" of Eglash's scheme.  For the notice here to be analogous to the title in *Schmuck*, Eglash would have had to

---

[9] *Schmuck*, 489 U.S. at 723 (Scalia, J. dissenting) (citing *Kann*, 323 U.S. at 95).

[10] 414 U.S. 395 (1974).

[11] *See Schmuck*, 489 U.S. at 714.

[12] 414 U.S. at 400 (quoting *Kann*, 323 U.S. at 94).

[13] 18 U.S.C. § 1341.

[14] *Id.*

be in the business of preparing fraudulent disability claims, needing notices of award to sell his criminal services to others. Since the Social Security Administration mailed the notice of award, not Eglash, and the notice was the fruit of Eglash's scheme, not a mailing sent for the purpose of defrauding the Social Security Administration, an element of the crime is missing in count 4.

Eglash was enough of a crook without counts 4 and 6 to make these two counts superfluous. The hardest part of this case to understand is why the government turned an easy and obvious conviction into a difficult appellate case and fractured opinion by overcharging him. Eglash was so plainly guilty of all the other counts, and probably would get the same sentence without counts 4 and 6, that charging him with mail fraud for mailings by the Social Security Administration that were not part of the execution of the scheme makes no practical sense. And if the jury had somehow acquitted him of the other counts, it is hard to imagine it nevertheless convicting him of counts 4 and 6. Eglash defrauded the Social Security Administration with a phony disability claim. The undeserved award was the fruit, not part of the execution, of his scheme. We ought to rehear this case en banc to correct our error in *Brown* that compels today's error.

WALLACE, Circuit Judge, concurring and dissenting:

I concur with regard to the majority's treatment of Counts 1, 2, 3, 4, 5, and 7, but I dissent from the majority's conclusion with regard to Count 6.

I agree with the majority that *United States v. Brown*, 771 F.3d 1149 (9th Cir. 2014), controls with regard to Count 4. Eglash is correct that the success of his fraudulent scheme did not depend upon receiving the notice of disability award underlying Count 4. That, however, is not the standard for determining whether a mailing was made "for the purpose of executing such scheme or artifice or attempting so to do" under 18 U.S.C. § 1341. The use of the mails "need not be an essential element of the scheme;" rather, it is "sufficient for the mailing to be '*incident to* an essential part of the scheme.'" *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989), *quoting Pereira v. United States*, 347 U.S. 1, 8 (1954) (emphasis added). In particular, a government entity's mailing of a routine document can create liability for mail fraud, as shown by the holdings in both *Schmuck* and *Brown*. 489 U.S. at 714–15; 771 F.3d at 1158; *see also United States v. Mitchell*, 744 F.2d 701, 703 (9th Cir. 1984) (upholding conviction based on mailings that were "routine, intrinsically innocent, and required by law").

Count 6 cannot be distinguished from the majority's conclusions with respect to Count 4. Although the Social Security Administration's (SSA) mailing of the application summary neither concealed nor perpetuated the fraud, and the mailing of the application summary was neither essential nor even necessary to the scheme, the same could be said of the mailing underlying Count 4, as well as the mailings in *Brown*.

In *Brown*, it was not essential to the defendants' scheme that the government mail a Notice of Chapter 7 Bankruptcy Case to one of the defendants; as co-conspirators, the defendants were fully aware of the bankruptcy filing (since it *was* an essential part of their scheme), and the scheme would not have been harmed in any way if the government had

failed to mail the Notice. However, the defendants' fraudulent scheme started the bureaucracy of the bankruptcy process, and as part of that process the government mailed out both a Notice of Chapter 7 Bankruptcy Case and eventually a Notice of Discharge. *Brown*, 771 F.3d at 1158. The mailing was only "necessary" in the sense that the mailing of bankruptcy notices to creditors follows the act of filing for bankruptcy—it is a natural part of the bureaucratic process set into motion by the filing. *See also Mitchell*, 744 F.2d at 704 ("the fraudulent scheme triggered the mailings, which would not have occurred except as a step in the scheme"). Likewise, in this case, Eglash started the Social Security application process to defraud the government, and the application summary was mailed to him as part of that process.

It is true that "[t]he relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time." *Schmuck*, 489 U.S. at 715. But this does not require that the perpetrator specifically envision, at the scheme's outset, that the charged mailing will occur; it is enough that the scheme conceived of by the perpetrator include the mailing as part of its normal execution. In *Brown*, for example, there is no indication that the defendant envisioned the mailing of the notices when he was planning the scheme. Instead, the question was whether the notices were part of the execution of the scheme as conceived by the defendant. 771 F.3d at 1158.

Even if Eglash had to envision specifically each individual mailing at the outset of his scheme, the evidence suggests that Eglash would have anticipated the SSA mailing him the application summary at issue here. Eglash had already experienced the entire Social Security application process when he assisted Hayes in applying for her own

Social Security benefits. Based on his familiarity with applying for benefits, the jury could have reasonably inferred that Eglash was aware of the SSA's process, including the fact that an application summary would be mailed to him. Also, even if Eglash had no experience with the application process, information about the process is easily accessible, including the fact that an application summary is mailed out after the submission of information online and over the phone. *See, e.g.*, Social Security Administration Program Operations Manual System GN 00201.015 (2015), *available at* http://policy.ssa.gov/poms.nsf/lnx/0200201015.

Eglash's conduct is analogous to the defendant's conduct in *Mitchell*. In *Mitchell*, the defendant set in motion the city government approval process for a condominium project as part of his scheme; the court concluded that he "knew the mails would be used in the course of securing the city's approval of the project" because city ordinances so indicated. 744 F.2d at 704, *citing United States v. Brutzman*, 731 F.2d 1449, 1454 (9th Cir. 1984), *overruled on other grounds by United States v. Charmley*, 764 F.2d 675, 677 n. 1 (9th Cir.1985) (defendant "set the forces in motion that foreseeably would involve use of the mails"). Likewise, Eglash, having not only been through the application process before, but also guided by the SSA's publicly displayed information, would have known the SSA would use the mail to send him a summary of his application.

Along with my colleagues, I was troubled by the government's assertion at oral argument that Eglash could have been subject to an additional mail fraud charge for each additional copy of the application summary that was mailed to him. However, that issue is not before us, because such an expansive interpretation of the mail fraud statute is not

necessary to uphold the conviction on Count 6. Our court has already held that mailings triggered in the ordinary course of a fraudulent scheme support mail fraud charges; inadvertent or erroneous mailings would fall outside that scope. I therefore conclude that because there was evidence offered at trial to show that the mailing of the summary was part of the Social Security application process, the jury could have reasonably found that the mailing was "incident to an essential part of [Eglash's] scheme." Therefore, I would affirm the conviction on count 6, as well as on the other counts.