Opinion by Judge CHRISTEN; Concurrence by Judge KLEINFELD; Partial Concurrence and Partial Dissent by Judge WALLACE.
OPINION
CHRISTEN, Circuit Judge:
After a jury trial, Cory Michael Eglash was convicted of four counts of mail fraud under 18 U.S.C. § 1341. Eglash appeals from the judgment. He argues that, for his mail fraud convictions on Counts 4 and 6, there is insufficient evidence showing the underlying mailings furthered his fraudulent scheme.[1] We affirm in part and reverse in part.
*884 BACKGROUND
. In 2010, Eglash and his girlfriend, Ramona Hayes, moved to San Juan Island, Washington. From 2010 to 2012, Eglash and Hayes ran a coffee shop. During the same period, Eglash also worked part time at an aquarium, volunteered at a senior center, and participated in a full-court basketball league.
In January 2011, Hayes submitted an application for disability benefits to the Social Security Administration (“SSA”), claiming that she had been unable to work since 2007 due to anxiety, manic depression, and other mental health issues. She identified Eglash as an individual who could speak to her disability. In response to a mailed request from the SSA, Eglash submitted a third party function report in which he indicated that he was Hayes’s “caregiver.” Eglash claimed that Hayes could not “function normally” or “drive or go outside alone,” and that he “seriously doubt[ed] that today [Hayes] could work in a retail store on a part time basis, or actually put gas in a car.”
In July 2011, SSA notified Hayes by mail that it had approved her application for benefits. The agency paid Hayes $20,740 in retroactive benefit payments and awarded her prospective monthly payments of $1,074.
On November 29, 2011, Eglash applied for disability benefits for himself. In December 2011, Eglash mailed to SSA a. function report claiming that he “cannot stand or sit for any length of time [and] ... cannot walk more than 100-200 y[ar]ds,” that he was “almost home bound,” and that “most of [his] hobbies were sports related and have now ceased due to [his] condition(s).”
In January 2012, after processing his application, SSA sent Eglash a mailing titled “Application Summary for Disability Insurance Benefits.” The top of the mailing informed Eglash: “On November 29, 2011, we talked with you and completed your application for SOCIAL SECURITY BENEFITS. We stored this information electronically in our records. We are enclosing a summary of your statements.” The rest of the mailing listed the statements Eglash made when he talked to SSA on November 29, 2011.
SSA special agents subsequently engaged in an undercover operation diming which different agents visited Eglash’s and Hayes’ coffee shop eight times. The agents engaged in conversation with Eglash and Hayes and recorded their interactions. The agents observed Eglash and Hayes prepare and serve meals and drinks to customers without any sign of disability. They noted that Eglash’s “movements were fluid and normal with no indication of discomfort,” and Hayes was “personable,” “gregarious,” and “very pleasant.” On the agent’s undercover video, Eglash claims that he walks everywhere, enjoys long bike rides, and sometimes plays basketball. He also says that he works at the coffee shop every day from 7 am to 5 pm and boasts about how ■he was the most efficient volunteer to paint a local church. And contrary to Eglash’s claim to SSA that Hayes could not drive or go outside alone, the video shows Hayes walking out of the coffee shop alone while telling Eglash that she was about to drive to a business meeting.
The Government later discovered additional evidence contradicting Eglash’s and Hayes’s claims of disability, such as proof that Eglash played full court basketball *885 once or twice weekly, including the week he applied for disability, ánd that he worked part time at a local aquarium and volunteered regularly in a senior center.
Eglash and Hayes were indicted on various criminal charges, including five counts of mail fraud pursuant to 18 U.S.C. § 1341. After the Government voluntarily dismissed one of the mail fraud counts, Eglash proceeded to trial on the remaining four. Count 4 charged mail fraud based on the notice of disability award that the SSA sent Hayes in July 2011. Count 6 charged mail fraud based on the summary of statements Eglash made when he talked to SSA on November 29, 2011. The summary was mailed to Eglash in January 2012.
At trial, Eglash did not challenge much of the Government’s evidence but instead asserted a good faith defense, claiming that he did not believe his work constituted “substantial gainful activity.” The jury convicted Eglash of all mail fraud counts. Eglash moved for a judgment of acquittal, challenging the sufficiency of the evidence and arguing that the Government did not prove that the mailings underlying Counts 4 and 6 furthered a fraudulent scheme. The district court orally denied the motion during its sentencing hearing, and Eglash timely appeals. We have jurisdiction under 28 U.S.C. § 1291.
LEGAL STANDARD and STANDARD OF REVIEW
“There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.” United States v. Gonzalez, 528 F.3d 1207, 1211 (9th Cir.2008). ‘When a claim of sufficiency of the evidence is preserved by making a motion for acquittal at the close of evidence, this court reviews the district court’s denial of the motion de novo.” Id.
DISCUSSION
Eglash claims the district court erred by denying his motion for judgment of acquittal on mail fraud Counts 4 and 6 because the underlying mailings were not shown to further a fraudulent scheme to receive disability benefits.
“There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts).” Schmuck v. United States, 489 U.S. 705, 721, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). “The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time, regardless of whether the mailing later, through hindsight, may prove to have been counterproductive and return to haunt the perpetrator of the fraud.” Id. at 715, 109 S.Ct. 1443. We have held that where “ ‘the execution of the scheme as conceived by1 [the defendant] depended” on a mailing, that mailing constitutes “an ‘essential step’ ” of the scheme and offers sufficient basis for a mail fraud conviction. United States v. Jinian, 725 F.3d 954, 963 (9th Cir.2013) (quoting Schmuck, 489 U.S. at 715,109 S.Ct. 1443).
We recently revisited this framework in United States v. Brown, 771 F.3d 1149 (9th Cir.2014). Brown concerned a scheme in which the defendant’s bankruptcy petition falsely claimed little or no income in recent years, underreported assets, and listed a fictitious loan for $2.5 million. Id. at 1153. As a result of the false claims in the petition, the bankruptcy trustee abandoned efforts to recover debts owed to *886 creditors and the defendant received a discharge. Id. We relied on Schmuck and observed that the Government had introduced evidence establishing notice of discharge “is essential to the bankruptcy process and a discharge is ‘the golden ring that people want in a bankruptcy. It’s a declaration that all debts that are dis-chargeable are discharged and the debtor no longer personally owned any of the debt.’ ” Id. at 1158. In light of this evidence, we concluded “[t]here was sufficient evidence of the mailings’ importance to [the] bankruptcy fraud scheme” and the court’s “mailing of the bankruptcy notices was ‘incident to an essential part of the scheme, or a step in the plot.’ ” Id. (quoting Schmuck, 489 U.S. at 711, 109 S.Ct. 1443).
In the instant case, Count 4 arises from the notice of disability award that SSA mailed to Hayes. That mailing informed Hayes that the agency had determined that she was “entitled to monthly disability benefits beginning November 2009.” It also indicated that Hayes would receive prospective monthly payments and retroactive payments for qualifying past months. Hayes and Eglash designed their scheme in the hope of defrauding the Government into paying them disability benefits, and Eglash offered false statements to support Hayes’s application and perpetuate the scheme. The result here is compelled by our decision in Brown. The notice of discharge in Brown was the penultimate step in the fraudulent scheme because the notice enabled the defendant to evade his debts to his creditors, which was his ultimate goal. Similarly, the notice of disability award marked the last step before Hayes would receive disability benefit payments, the goal of her fraudulent plan with Eglash. Although the Government, not the defendant, mailed the notice of discharge in Brown and the notice of disability award here, each mailing was a contemplated, necessary step in its respective scheme. Like the notice of discharge, the notice of award was the “golden ring” in Eglash’s plot and “ ‘incident to an essential part of the scheme.’ ” Id. (quoting Schmuck, 489 U.S. at 711, 109 S.Ct. 1443). We therefore affirm the district court’s judgment on Count 4.
Count 6 pertains to the application summary that SSA mailed to Eglash in January 2012. The summary recounts the statements that Eglash made on November 29, 2011, when he applied for his own disability benefits. The letter states: ‘We stored this information electronically in our records. We are enclosing a summary of your statements.” It did not require Eglash to take any action.
There is no indication that the scheme, as Eglash conceived it, contemplated or depended on receiving such a summary. Nor was the summary necessary to bring the scheme to fruition because Eglash’s fraudulent statements had already been entered and saved in SSA’s records. Finally, the SSA did not require that Eglash sign and return the summary, or do anything else with it, in order to complete his application for benefits. See Schmuck, 489 U.S. at 715, 109 S.Ct. 1443; United States v. Jinian, 725 F.3d 954, 963 (9th Cir.2013). In short, the evidence did not show that printing and mailing the summary furthered any part of Eglash’s scheme. For this reason, the Government’s position at oral argument — that it could issue such a mailing repeatedly and charge a separate count of mail fraud for each of its duplicate mailings — is wrong. The summary may have been a predictable consequence of Eglash’s fraudulent application, but the fraud he envisioned was neither dependent upon nor furthered by the Government’s decision to transcribe, in summary form, the fraudulent statements he made when *887 he talked to SSA on November 29, 2011.[2] Because the underlying mailing was not “part of the execution of the scheme as conceived by the perpetrator at the time,” Schmuck, 489 U.S. at 715, 109 S.Ct. 1443, and because it did nothing to further the scheme, we reverse Eglash’s mail fraud conviction on Count 6.
CONCLUSION
We affirm the district court’s judgment on Count 4 of Eglash’s mail fraud convictions, but reverse on Count 6.[3] We remand for further proceedings consistent with this opinion.
Each party shall bear its own costs on appeal.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

. In a separate memorandum disposition issued concurrently, we address Eglash's other *884 arguments and affirm his convictions for one count of conspiracy to defraud the United States under 18 U.S.C. § 286, one count of making a false statement to the United States under 18 U.S.C. § 1001(a)(2), and, two other counts of mail fraud under 18 U.S.C. § 1341.

.The dissent argues this reasoning cannot be reconciled with our reasoning on Count 4. We disagree. Count 4 falls very close to the line of permissible mail fraud prosecutions, but we ultimately affirm the conviction on that count because the notice of disability, like the mailings at issue in Brown and United States v. Mitchell, was "required to consummate the scheme.” United States v. Mitchell, 744 F.2d 701, 704 (9th Cir.1984); see also Brown, 111 F.3d at 1158. By contrast, the summary mailing at issue in Count 6 was not required to consummate Eglash's fraud: Eglash had already telephonically communicated his false information to SSA, and SSA had stored the information electronically. The summary mailing merely memorialized that this step had been taken. In this critical way, Counts 4 and 6 differ.

.Eglash's motion for judicial notice is granted.